538 S.E.2d 714

Brenda Sue MOORE, Individually and as Administratrix of the Estate of Richard Moore, Deceased, Plaintiff Below, Appellant,

v.

ST. JOSEPH'S HOSPITAL OF BUCK-HANNON, INC., A West Virginia Corporation, Defendant Below, Appellee.

No. 27460.

Supreme Court of Appeals of West Virginia.

Submitted June 13, 2000.

Decided July 7, 2000.

Guy R. Bucci, V. Paul Bucci, II, Bucci, Bailey & Javins L.C., Charleston, West Virginia, David R. Rexroad, Buckhannon, West Virginia, Attorneys for the Appellant.

Michael J. Farrell, Tamela J. White, Christina L. Smith, Farrell, Farrell & Farrell, Huntington, West Virginia, Attorneys for the Appellee.

PER CURIAM:

This appeal was filed by Brenda Sue Moore (hereinafter referred to as "Mrs. Moore"), appellant/plaintiff,[1] from a final judgment in a wrongful death medical malpractice action against St. Joseph's Hospital of Buckhannon, Inc. (hereinafter referred to as "St. Joseph's"), appellee/defendant.[2] The case was tried before a jury in the Circuit Court of Harrison County. The jury returned a verdict for Mrs. Moore and awarded her $150,000.00 in damages. In this appeal, Mrs. Moore contends that the damage award was inadequate.[3] After a careful review of the record in this case and after listening to the arguments of the parties, we affirm the judgment of the Circuit Court of Harrison County.

## I.

### FACTUAL AND PROCEDURAL HISTORY

This case originated as a result of the death of Mrs. Moore's husband, Richard R. Moore (hereinafter referred to as "Mr. Moore"). In 1995, Mr. and Mrs. Moore lived in Buckhannon, West Virginia. Mr. Moore owned and operated an auto repair garage. Mrs. Moore was employed outside the home.[4] Mr. and Mrs. Moore had four children, Vicky (age 23), Randy (age 22), David (age 18), and Douglas (age 16).

In February, 1995, Mr. Moore visited Dr. Frank Grisworld for treatment of an ulcer in his lower right leg. Mr. Moore, who weighed approximately 420 pounds, had been troubled by the ulcer for about six years. During the visit, Dr. Grisworld reported that the ulcer was responding to treatment.

On March 28, 1995, Mr. Moore was taken to St. Joseph's emergency room. Mr. Moore complained of muscular and skeletal pain. He was treated conservatively and released. Two days later, on March 30, 1995, Mr. Moore was again taken to St. Joseph's emergency room. Mr. Moore complained of sweating and shortness of breath. He was diagnosed as having pneumonia. Mr. Moore was again treated and released. On April 3, 1995, Mr. Moore was, for the third time, admitted to St. Joseph's emergency room. During this visit, Mr. Moore again complained of sweating and shortness of breath. Mr. Moore was diagnosed as suffering from congestive heart failure. He was eventually transferred for treatment, on April 4, 1995, to United Hospital Center, Inc. On April 6, 1995, Mr. Moore died while at United Hospital Center. The cause of death was attributed to pulmonary embolism.

In 1996, the instant wrongful death action was filed alleging negligence by St. Joseph's for failing to diagnose and treat Mr. Moore for pulmonary embolism. The case was heard by a jury, and on November 4, 1998, the jury returned a verdict finding St. Joseph's 75% liable for the death of Mr. Moore.[5] The jury awarded Mrs. Moore $50,000.00 in non-economic damages and $100,000.00 in economic damages. As a result of a set-off resulting from Mrs. Moore's settlement with United Hospital Center, there was no actual monetary recovery from St. Joseph's. Mrs. Moore filed a post-trial motion seeking a new trial on damages, which was denied. It is from this post-trial motion that Mrs. Moore now appeals.

## II.

### STANDARD OF REVIEW

We are asked to determine whether the circuit court committed error by denying Mrs. Moore's post-trial motion for a new trial

---

1. Mrs. Moore filed the suit individually and as administratrix of the estate of Richard R. Moore, deceased.

2. The suit also named United Hospital Center, Inc., (hereinafter referred to "United Hospital Center") as a defendant. However, United Hospital Center settled at the start of trial and is not a party in this appeal.

3. As a result of the set-off from the $175,000.00 settlement reached with United Hospital Center,

Inc., Mrs. Moore received no actual monetary award from the jury verdict.

4. Mrs. Moore was actually employed in some capacity by St. Joseph's at the time of her husband's death.

5. The jury assessed United Hospital Center, with 25% liability for Mr. Moore's death.

on damages.[6] We addressed the standard of review of a denial of a motion for a new trial in *Tennant v. Marion Health Care Foundation*, 194 W.Va. 97, 459 S.E.2d 374 (1995):

> We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

*Tennant*, 194 W.Va. at 104, 459 S.E.2d at 381.[7] Additionally, we held in Syllabus point 1 of *Kaiser v. Hensley*, 173 W.Va. 548, 318 S.E.2d 598 (1983), that "[i]n an appeal from an allegedly inadequate damage award, the evidence concerning damages is to be viewed most strongly in favor of the defendant."

With these principles in mind, we turn to the substantive issues presented by this case.

## III.

## DISCUSSION

Mrs. Moore contends that the jury's award of damages in this case was manifestly inadequate. In *Kessel v. Leavitt*, 204 W.Va. 95, 185, 511 S.E.2d 720, 810 (1998), this Court observed that "in the absence of any specific rules for measuring damages, the amount to be awarded rests largely in the discretion of the jury, and courts are reluctant to interfere with such a verdict." (Quoting 22 Am.Jur.2d *Damages* § 1021, at 1067 (1988)(footnote omitted)). Generally, "[w]e will not find a jury verdict to be inade-

quate unless it is a sum so low that under the facts of the case reasonable men cannot differ about its inadequacy." Syl. pt. 2, *Fullmer v. Swift Energy Co., Inc.*, 185 W.Va. 45, 404 S.E.2d 534 (1991). Likewise, "[a]n appellate court will not set aside the verdict of a jury, founded on conflicting testimony and approved by the trial court, unless the verdict is against the plain preponderance of the evidence." Syl. pt. 1 *Kessel*, 204 W.Va. 95, 511 S.E.2d 720 quoting Syl. pt. 1, *Walker v. Monongahela Power Co.*, 147 W.Va. 825, 131 S.E.2d 736 (1963); Syl. pt. 2, *Stephens v. Bartlett*, 118 W.Va. 421, 191 S.E. 550 (1937). Furthermore, in Syllabus point 3 of *Kaiser v. Hensley*, 173 W.Va. 548, 318 S.E.2d 598 (1983), we held that "[w]here a verdict does not include elements of damage which are specifically proved in uncontroverted amounts and a substantial amount as compensation for injuries and the consequent pain and suffering, the verdict is inadequate and will be set aside." (Citing *King v. Bittinger*, 160 W.Va. 129, 231 S.E.2d 239 (1976); *Hall v. Groves*, 151 W.Va. 449, 153 S.E.2d 165 (1967)).

Having set forth the applicable law, we turn now to the errors assigned in this appeal. The verdict form in this case specifically required the jury to separately establish damages for economic and non-economic losses. We will therefore review separately the adequacy of the economic and non-economic damages awarded to Mrs. Moore.[8]

### A. Economics Damages

The jury awarded to Mrs. Moore $100,000.00 for economic damages. This

---

6. In this regard, Rule 59(a), R.C.P., of the parties on all or part of the issues, and in a case where the question of liability has been resolved in favor of the plaintiff leaving only the issue of damages, the verdict of the jury may be set aside and a new trial granted on the single issue of damages. Syl. pt. 4, *Richmond v. Campbell*, 148 W.Va. 595, 136 S.E.2d 877 (1964).

7. In her brief, Mrs. Moore cites the standard of review applicable to a motion to alter or amend a judgment under Rule 59(e) of the West Virginia Rules of Civil Procedure. St. Joseph's correctly contends that Mrs. Moore's post-trial motion for a new trial was not brought under Rule 59(e). This Court noted in Syllabus point 4 of *James M.B. v. Carolyn M.*, 193 W.Va. 289, 456 S.E.2d 16 (1995), that "Rule 59(e) of the West Virginia

Rules of Civil Procedure provides the procedure for a party who seeks to change or revise a judgment entered as a result of a motion to dismiss or a motion for summary judgment."

8. Mrs. Moore argues in her brief that the circuit court ruled that a separate analysis for economic and non-economic damages could not be made. St. Joseph's contends that the circuit court made no such ruling. In this Court's review of the hearing on the motion for a new trial, we find no limitation imposed by the circuit court in its review of the adequacy of damages. In fact, the circuit court discussed separately both damage awards, even though counsel for Mrs. Moore stated that he was only concerned with arguing the adequacy of non-economic damages.

award was premised on evidence regarding lost income resulting from Mr. Moore's death.[9]

Conflicting evidence was presented regarding Mr. Moore's future income. Mrs. Moore presented evidence to suggest that her husband could earn $22,000.00 per year as a coal truck driver. Thus, based upon his life expectancy, he would have earned roughly $453,455.00 during the remainder of his life.

In contrast, St. Joseph's challenged the evidence regarding the nature of work Mr. Moore could perform, had he lived. There was evidence presented that Mr. Moore would not have returned to his former work as a coal truck driver due to his obesity and chronic right leg ulcer.[10] Evidence also showed that, from about 1993 to the time of his death, Mr. Moore operated a garage where he restored wrecked automobiles. St. Joseph's presented further evidence indicating that Mr. Moore did not make a profit during the time that he operated the garage. Finally, expert testimony by St. Joseph's economist indicated that Mr. Moore would have earned about $243,818.00 during the remainder of his life.

■ The jury accepted neither expert's testimony regarding Mr. Moore's future income. The jury instead appeared to have reached a middle ground by awarding only $100,000.00. During the hearing on Mrs. Moore's motion for a new trial on damages, the trial Court addressed the issue of the jury's award for economic loss as follows:

THE COURT: [I]n this case the jury sent out a question, wanted to know essentially if they were bound by these tables on lost income and the attorneys, who are both competent attorneys in this case, agreed for me to answer that question, and the way that I did answer it was that they weren't bound by any table and they alone were to determine the amount. And we instruct the jury that they're not bound by what the experts say and they can give it such credit or weight as they believe it deserves.

So, based upon all that, the fact that they didn't return the low projection nor high projection, something less than that, I believe is not a problem. I mean I think this jury really thought about that and thought about that projected lost income, and based upon all the factors, but didn't just blindly adopt what they said and came up with this economic loss of a hundred thousand dollars. . . .

The trial court's statement regarding the discretion juries have in accepting or rejecting expert testimony was consistent with the law. We addressed this issue in *Martin v. Charleston Area Medical Center*, 181 W.Va. 308, 382 S.E.2d 502 (1989), where it was said that:

Indeed, . . . the jury has the right to weigh the testimony of all witnesses, experts and otherwise, and . . . the jury is to give only as much weight and credit to expert testimony as the jury deems it entitled to when viewed in connection with all the circumstances.

*Martin*, 181 W.Va. at 311, 382 S.E.2d at 505. Because the expert testimony in this case was conflicting on the issue of economic damages, we cannot say that the trial court erred by refusing to disturb the jury award for economic damages. We must, therefore, affirm the judgment as to economic damages.

### B. Non-economic Damages

The jury awarded to Mrs. Moore $50,000.00 for non-economic damages.[11] Mrs. Moore relies primarily upon this Court's decision in *Martin v. Charleston Area Medical Center, supra*, as support for

---

**9.** Under our wrongful death statute, W.Va.Code § 55–7–6(c)(1)(B)(i)[1992], a jury may award damages for reasonably expected loss of income of the decedent.

**10.** Evidence indicated that Mr. Moore had been an independent coal truck driver, but that, prior to 1993, the company that he hauled coal for went bankrupt. Additionally, there was evidence that Mr. Moore would never again drive a coal truck because he was involved in a vehicular accident which caused death to another person.

**11.** The jury verdict form allocated the non-economic award so as to provide $10,000.00 for Mrs. Moore and $10,000.00 for each of the Moores' four children.

her position that the jury's award of non-economic damages was inadequate.[12]

The decision in *Martin* involved a wrongful death action wherein the jury awarded $250,000.00 to the decedent's wife and four children. In finding the jury's award inadequate in *Martin*, this Court stated:

We believe that had the jury's verdict for $250,000 been for economic loss alone, it would not have been contrary to the weight of the evidence. However, when we take into consideration that the plaintiff, in her representative capacity, was also suing for non-economic loss, specifically for loss of a father and loss of a husband, we find that the verdict is inadequate.

*Martin*, 181 W.Va. at 311, 382 S.E.2d at 505.

*Martin* is not dispositive on the issue of non-economic damages in the instant case for two reasons. First, in *Martin* there was no specific amount awarded as non-economic damages. The jury in *Martin* simply returned a gross award. Second, the critical factor in this Court's determination of the damage ·award's inadequacy related to the plaintiff's race. We stated in *Martin:*

In the case before us our decision is informed to some extent by the fact that the plaintiff is a black woman suing for the death of a black husband and father on behalf of herself and four black children. In cases of this type involving white plaintiffs, when plaintiffs prevail at all, the awards are substantially higher.

*Martin*, 181 W.Va. at 312, 382 S.E.2d at 506.

In the instant case, the jury made a specific award of economic damages. Moreover, the plaintiff in this case, as was argued by St. Joseph's during the post-trial hearing for a new trial on damages, is white.

■ The critical factor in determining whether the amount of non-economic dam-

ages was adequate in this case concerns the nature of the evidence presented on this matter. Mrs. Moore presented evidence suggesting that Mr. Moore played an active role in the daily life of his family and that the family members were close.[13] There was evidence that Mr. Moore regularly went to drag racing events, fishing trips and school soccer games with his family.

St. Joseph's presented evidence suggesting that Mr. Moore was, in fact, alienated from his family. This evidence included testimony that Mr. Moore spent most of his time working in his garage, slept on a couch in his home, and rarely had dinner with his family. Testimony also suggested the drag racing events, fishing trips and soccer games were not regular family outings.

The trial court acknowledged that it was concerned with the jury's award on non-economic damages, but decided that the jury was in the best position to make the determination. *See Keiffer v. Queen*, 155 W.Va. 868, 873, 189 S.E.2d 842, 845 (1972) ("The courts usually state that though they might have awarded a greater or lesser amount than that contained in the jury verdict, they will not substitute their views for that of the jury.").

Although this Court may believe that Mrs. Moore should have received a greater award for non-economic damages, we cannot substitute our opinion for that of the jury based upon the record in this case. We indicated in Syllabus point 2, in part, of *Richmond v. Campbell,* 148 W.Va. 595, 136 S.E.2d 877 (1964), that

[a] mere difference in opinion between the court and the jury as to the amount of recovery in such cases will not warrant the granting of a new trial on the ground of inadequacy unless the verdict is so small

---

**12.** The wrongful death statute, W.Va.Code § 55–7–6(c), states that:

· (1) The verdict of the jury shall include, but may not be limited to, damages for the following: (A) Sorrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent; (B) compensation for reasonably expected loss of ... services, protection, care

and assistance provided by the decedent; (C) expenses for the care, treatment and hospitalization of the decedent incident to the injury resulting in death; and (D) reasonable funeral expenses.

**13.** Only Mrs. Moore and her son David testified at trial. The other three children, while present, did not testify.

that it clearly indicates that the jury was influenced by improper motives.

*See Sargent v. Malcomb,* 150 W.Va. 393, 396, 146 S.E.2d 561, 564 (1966) ("[A] mere difference of opinion between the court and the trial jury concerning the proper amount of recovery will not justify either the trial court or this Court in setting aside the verdict on the ground of inadequacy or excessiveness."). Mrs. Moore has failed to demonstrate to this Court that the jury used some illegal motive to reach its determination in awarding non-economic damages, or that the jury instructions were misleading or incorrect. We, therefore affirm the trial court's ruling on the issue of non-economic damages.

## IV.

### CONCLUSION

The judgment of the circuit court is affirmed.

Affirmed.

Justice McGRAW dissents.