541 S.E.2d 11

**Wilma E. VARGO, Executrix of the Estate of Martha J. Fornari, Deceased, Plaintiff Below, Appellant,**

v.

**Sandra L. PINE and David J. Pine, Defendants Below, Appellees.**

No. 26111.

Supreme Court of Appeals of West Virginia.

Submitted May 3, 2000.

Decided July 10, 2000.

Dissenting Opinion of Justice Starcher July 20, 2000.

Concurring and Dissenting Opinion of Justice McGraw Dec. 13, 2000.

Jason A. Cuomo, Frank A. Cuomo, Cuomo & Cuomo, Wellsburg, for Plaintiff Below, Appellant.

V. Tad Greene, McDermott & Bonenberger, Wheeling, for Defendants Below, Appellees.

MAYNARD, Chief Justice.

The appellant and plaintiff below, Wilma E. Vargo, Executrix of the Estate of Martha J. Fornari, appeals the October 30, 1998 order of the Circuit Court of Brooke County denying the appellant's motion for a new trial on the issue of damages.[1] After careful con-

---

**1.** Originally, the appellant alleged that the circuit court erred in denying judgment as a matter of law on the issue of comparative negligence. During oral argument before this Court, however, the appellant waived or abandoned this issue.

sideration of the issue, we affirm the judgment of the circuit court.

# I.

## FACTS

At about 10:30 p.m. on November 27, 1995, Martha Jean Fornari (hereinafter "Mrs. Fornari" or "the decedent") was walking across an intersection in Wellsburg, Brooke County, when she was struck and killed by an automobile driven by the defendant, Sandra Pine. As a result, the appellant, Wilma E. Vargo, Mrs. Fornari's stepdaughter and the executrix of her estate, brought an action against the appellees, Sandra L. Pine (Mrs. Pine) and her husband, David J. Pine, alleging, *inter alia*, that Mrs. Pine's negligent operation of her vehicle caused the death of Mrs. Fornari.[2]

At trial, evidence was adduced that Mrs. Fornari was walking from west to east across the intersection, had completely crossed three lanes of traffic and was nearly to the opposite sidewalk when she was struck by Mrs. Pine's vehicle in the eastern portion of the northbound lane. The parties agreed that it was very dark outside. Mrs. Pine was traveling about 43 to 45 miles per hour and had the green light when traveling through the intersection. There was also testimony that the highway to the south of the intersection is flat and free of curves.

Other evidence was heavily contested. There was conflicting testimony concerning how hard it was raining the night of the accident. Also in dispute was whether Mrs. Fornari was struck in the southern end of the intersection where the roadway was illuminated by the lights of a nearby business or at the intersection's northern end which was dark. The appellant presented evidence that Mrs. Fornari was wearing a pink jacket, and the appellee countered with testimony that Mrs. Fornari was dressed in dark colors. Finally, there was controverted evidence that the appellee was distracted by a vehicle to her left, which was driven by a friend of the appellee, immediately prior to striking Mrs. Fornari.

Concerning damages, the parties stipulated to medical and hospital expenses in the sum of $18,837.50 and funeral expenses in the sum of $5,879.86. The appellant presented expert testimony that Mrs. Fornari's loss of income amounted to $172,616.97.[3] Finally, the appellant presented uncontroverted testimony of the close relationship between Mrs. Fornari and the appellant.

At the close of the trial, the jury found that the negligence of both the appellee and Mrs. Fornari caused and contributed to the accident. The jury apportioned 51% of the total negligence to the appellee and 49% to Mrs. Fornari. The sum of $18,837.50 was awarded to the appellant for hospital and medical expenses and $5,879.86 was awarded for funeral expenses for a total amount of $24,717.36 in damages. The jury awarded nothing for mental anguish, loss of income and loss of services. In its judgment order, the circuit court awarded a total of $16,119.02 to the appellant.[4]

# II.

## STANDARD OF REVIEW

■ Initially, we note that,

[a]s a general proposition, we review a circuit court's rulings on a motion for a new trial under an abuse of discretion standard. Thus, in reviewing challenges to findings and rulings made by a circuit

---

2. In addition, the appellant sued the City of Wellsburg for failure to properly maintain the traffic lights and signals at the intersection in which Mrs. Fornari was killed. Prior to trial, the city settled with the appellant for the sum of $20,000.

3. The expert explained that Mrs. Fornari's income was $1,427.00 per month, and her life expectancy was 11.37 years. (Mrs. Fornari was 76 years of age at the time of her death). The multiplication of these two numbers is $194,699.98 gross income. This amount was reduced to its present value of $172,616.97.

4. This amount represented $24,717.36 plus interest in the sum of $6,087.59 ($30,804.95), less 49% negligence on the part of Mrs. Fornari, which comes to a judgment of $15,710.52. Added to this number were costs and interest to accrue from May 15, 1998, at the rate of 10% per annum, until paid, totaling $408.50 as of August 3, 1998, the date of the order.

court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

*Tennant v. Marion Health Care Foundation,* 194 W.Va. 97, 104, 459 S.E.2d 374, 381 (1995) (citation omitted). Additionally, we held in Syllabus Point 1 of *Kaiser v. Hensley,* 173 W.Va. 548, 318 S.E.2d 598 (1983), that "[i]n an appeal from an allegedly inadequate damage award, the evidence concerning damages is to be viewed most strongly in favor of the defendant." With these standards as our guide, we now consider the issue before us.

## III.

## DISCUSSION

The sole issue is whether the jury's verdict was so low under the facts that reasonable persons could not differ as to its inadequacy. The appellant notes that the verdict amounts to only $9,622.93, after deducting the post-judgment interest, which is less than the uncontested and stipulated medical and funeral expenses. The appellant further opines that the jury awarded nothing for mental anguish, loss of income and loss of services despite uncontested evidence that showed $172,616.97 in lost income and a close relationship between Mrs. Fornari and the appellant.

To determine the applicable law in reviewing the complained of verdict, a survey of the relevant cases is helpful. This Court has on several occasions considered challenges to alleged inadequate verdicts in wrongful death actions. In *Hawkins v. Nuttallburg Coal & Coke Co.,* 66 W.Va. 415, 66 S.E. 520 (1909), a coal company employee was killed and his administrator brought a wrongful death action against the coal company. The jury rendered a verdict for the plaintiff for $500 in damages, and the plaintiff moved the court to set aside the verdict because it was so small that it evinced passion, prejudice, or corruption. The circuit court set aside the verdict and awarded the plaintiff a new trial,

and the coal company appealed. This Court held that the circuit court erred in setting aside the verdict and stated:

> We have held that, where a motion to set aside a verdict is because of excessive or inadequate damages, the court must not encroach on the province of a jury. In their assessment in tort cases there is no fixed measure, as in cases of contract. This is the case in actions generally. But in the case of an action under the statute for the death of a person this is peculiarly the case. Our decisions go to the effect that the jury, in such cases, is under the statute giving the action absolutely the judge of the amount of damages, and its finding cannot be disturbed unless the court can see that the jury was actuated by passion, prejudice, or corruption.

*Id.,* 66 W.Va. at 416, 66 S.E. at 520 (citations omitted). The Court further said that the presence of passion, prejudice, or corruption cannot be presumed from the mere amount of the verdict.

*Legg v. Jones,* 126 W.Va. 757, 30 S.E.2d 76 (1944), concerned a sixteen-year-old healthy, industrious, and energetic youth who was struck and killed by an automobile while delivering newspapers in the early morning. At trial, the jury awarded damages in the amount of $1000 against the driver of the automobile, and the plaintiff appealed alleging, *inter alia,* that the verdict was so inadequate as to show bias, fraud, partiality, corruption, and prejudice. This Court recognized a distinction between wrongful death and other tort actions, stating that "[i]n actions to recover for death by wrongful act, neglect, or default under the statute, it is the peculiar right, as well as the duty, of the jury to fix the amount of recovery. The right is conferred and the duty imposed by the statute which gives the right of action." *Id.,* 126 W.Va. at 762, 30 S.E.2d at 79. The Court also restated, in syllabus point 2, the law set forth in *Hawkins:*

> In an action for death by wrongful act the jury is the arbiter of the amount of damage, and its finding will not be set aside for the reason that the recovery is inadequate, unless it can be seen that the

jury was misled or was motivated by passion, prejudice, partiality or corruption.

In addition, the Court noted, citing *Hawkins*, that "meagerness of the verdict alone is not a sufficient reason to set [the verdict] aside." *Legg*, 126 W.Va. at 763, 30 S.E.2d at 79. Finding no evidence of improper motives which could have influenced the jury, the Court affirmed the verdict.

In *Kesner v. Trenton*, 158 W.Va. 997, 216 S.E.2d 880 (1975), the jury found for the plaintiff on the question of liability where plaintiff's two daughters drowned in a lake operated by the defendant. The jury awarded only funeral expenses, and the circuit court awarded new trials on the ground that the verdicts were inadequate as a matter of law. The defendant appealed and argued that the trial court is forbidden to set aside a verdict in a wrongful death action on the ground of inadequacy alone. This Court agreed. Relying on the *Hawkins* and *Legg* cases, the Court first noted that it had been "definite and consistent in its view to limit review of jury verdicts in death cases," recognizing "that the jury's enlightened conscience is the sole measure of damages." *Kesner*, 158 W.Va. at 1007, 216 S.E.2d at 886. Thus, the Court held in syllabus point 1:

> Where a jury finds a defendant liable in a wrongful death action, it has absolute discretion, without regard to proof of actual damages, pecuniary loss and the like, to make any award it deems "fair and just . . ." and the trial court's submission to the jury of a verdict form which embodies the directions of *W.Va.Code* 1931, 55–7–6, as amended, is not error.

The Court further held in syllabus point 7 that "[t]he meagerness of a verdict in a wrongful death action is not sufficient reason to set it aside; to be inadequate *at law*, a verdict must have resulted from error in the case or from jurors' misconduct." Finding no evidence that the jury was motivated by passion, prejudice, partiality, or corruption in the rendition of the verdicts, the Court found that the verdicts were not inadequate. However, the Court affirmed the circuit court's award of new trials because it found that improper jury instructions were given.[5]

In *Martin v. Charleston Area Medical Ctr.*, 181 W.Va. 308, 382 S.E.2d 502 (1989), the Court added a new component to its review of allegedly inadequate damages in wrongful death cases. In *Martin*, the decedent died as a result of a diagnostic procedure at the Charleston Area Medical Center (CAMC). In the resulting wrongful death action, the decedent was assessed 40% negligence and the defendants were assessed a total of 60% negligence. The jury awarded damages in the amount of $250,000 and the plaintiff appealed alleging an inadequate verdict. The Court stated as the applicable law:

> In a tort action arising from wrongful death for alleged medical malpractice this Court will set aside a jury verdict and award a new trial on all issues where: (1) the jury verdict is clearly inadequate when the evidence on damages is viewed most strongly in favor of defendant; (2) liability is contested and there is evidence to sustain a jury verdict in favor of either plaintiff or defendant; and (3) the jury award, while inadequate, is not so nominal under the evidence as to permit the court to infer

5. Under the 1967 version of W.Va.Code § 55–7–6, in effect when *Kesner* was decided, there was a $10,000 cap on wrongful death damages; a $100,000 cap on compensatory damages arising from the death; and damages were provided for reasonable funeral, hospital, medical and other expenses incurred as a result of the death. Although the wrongful death statute did not, at that time, provide for damages for sorrow and mental anguish, this Court had recognized in *Stamper v. Bannister*, 146 W.Va. 100, 118 S.E.2d 313 (1961), *superseded by statute as stated in Jackson v. Cockill*, 149 W.Va. 78, 138 S.E.2d 710 (1964), that grief and sorrow of the beneficiaries are proper elements of damage under the wrongful death statute.

The current version of W.Va.Code § 55–7–6 contains no limit on awards of damages. It further provides at (c)(1),

> The verdict of the jury shall include, but may not be limited to, damages for the following: (A) Sorrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent; (B) compensation for reasonably expected loss of (i) income of the decedent, and (ii) services, protection, care and assistance provided by the decedent; (C) expenses for the care, treatment and hospitalization of the decedent incident to the injury resulting in death; and (D) reasonable funeral expenses.

that it was a defendant's verdict perversely expressed.

Syllabus, *Id.*, 181 W.Va. 308, 382 S.E.2d 502 (1989). Nevertheless, the Court turned its decision to reverse the verdict, at least in part, on the *Legg* analysis. The Court explained:

> In the case before us our decision is informed to some extent by the fact that the plaintiff is a black woman suing for the death of a black husband and father on behalf of herself and four black children. In cases of this type involving white plaintiffs, when plaintiffs prevail at all, the awards ... are substantially higher.

*Martin*, 181 W.Va. at 312, 382 S.E.2d at 506.

The next case in our review, and the one on which the appellant bases her argument, is *Linville v. Moss*, 189 W.Va. 570, 433 S.E.2d 281 (1993). In *Linville*, the decedent was attempting to assist the driver of a tractor trailer to back his truck onto the highway when the decedent was struck and killed by another automobile. The decedent was a forty-one-year-old unemployed male who had assumed most of the responsibilities of the household and the care of his twelve-year-old stepson. Testimony at trial revealed $3,719 in funeral expenses and an estimated value of replacement services of $240,180. The jury returned a verdict of $4000 for reasonable funeral expenses, assessing forty-nine percent negligence to the decedent, twenty-six percent negligence to the driver of the automobile that struck the decedent, and twenty-five percent negligence to the company that owned the tractor trailer. The jury awarded nothing to decedent's wife and son for loss of services, sorrow, mental anguish, or companionship. The circuit court denied the appellant's motion to set aside the verdict and to award a new trial on all issues or simply on the issue of damages.

In reviewing the verdict, we applied a similar standard as that in *Martin* and stated in Syllabus Point 4 that:

> " 'In a civil action for recovery of damages for personal injuries in which the jury returns a verdict for the plaintiff which is manifestly inadequate in amount and which, in that respect, is not supported by the evidence, a new trial may be granted to the plaintiff on the issue of damages on the ground of the inadequacy of the amount of the verdict.' Syl. Pt. 3, *Biddle v. Haddix*, 154 W.Va. 748, 179 S.E.2d 215 (1971)."

The Court found that the damages were inadequate and remanded the matter for a new trial solely on the issue of damages.

■ Finally, in *Moore v. St. Joseph's Hospital of Buckhannon*, 208 W.Va. 123, 538 S.E.2d 714 (2000) (per curiam), we affirmed an allegedly inadequate verdict of $150,000 in a wrongful death medical malpractice action. There we set forth the applicable standard of reviewing an allegedly inadequate verdict in wrongful death cases, in part, as follows:

> In *Kessel v. Leavitt*, 204 W.Va. 95, 185, 511 S.E.2d 720, 810 (1998), this Court observed that "in the absence of any specific rules for measuring damages, the amount to be awarded rests largely in the discretion of the jury, and courts are reluctant to interfere with such a verdict." (Quoting 22 Am.Jur.2d *Damages* § 1021, at 1067 (1988) (footnote omitted)). Generally, "[w]e will not find a jury verdict to be inadequate unless it is a sum so low that under the facts of the case reasonable men cannot differ about its inadequacy." Syl. pt. 2, *Fullmer v. Swift Energy Co., Inc.*, 185 W.Va. 45, 404 S.E.2d 534 (1991).

*Moore*, 538 S.E.2d at 716.

At first glance, a tension in our law is suggested by this survey of wrongful death cases. *Hawkins*, *Legg*, and *Kesner* hold that a verdict in a wrongful death action will not be set aside unless it can be shown that the jury was misled or was motivated by passion, prejudice, partiality, or corruption. The recent cases of *Martin*, *Linville*, and *Moore* essentially indicate that a jury verdict will be set aside if it is clearly or manifestly inadequate or so low under the facts of the case that reasonable men cannot differ about its inadequacy.[6] We believe, however, that

---

6. As alluded to in *Hawkins* and *Legg*, this Court has traditionally made a distinction between wrongful death and other types of tort cases. This distinction stems from the fact that, unlike actions for property damage or personal injury, an action for wrongful death did not exist at

these two lines of cases can be harmonized by applying them to different circumstances. The *Legg* analysis applies specifically to those wrongful death cases in which evidence of jury passion, prejudice, partiality, or corruption is found in the record or raised by the parties in their pleadings to this Court. The *Martin* and *Linville* analysis, on the other hand, is applicable in those cases in which there is no evidence or claim of jury misconduct, but instead it is averred that the amount of damages is unreasonably low and at variance with the evidence adduced at trial. Therefore, rather than reading *Martin/Linville* as a clear break with the *Legg* analysis, we believe that *Martin/Linville* provide a standard for reviewing allegedly inadequate verdicts in wrongful death cases where there is no evidence or claim of jury misconduct.

▮ Accordingly, we hold that in a wrongful death action, this Court will set aside an allegedly inadequate verdict when it can be seen that the jury was misled or was motivated by passion, prejudice, partiality, or corruption. In instances where the evidence does not indicate and the plaintiff does not aver that the jury was misled or motivated by passion, prejudice, partiality, or corruption, this Court will set aside an allegedly inadequate verdict in a wrongful death action only where the verdict is a sum so low that under the facts of the case reasonable men cannot differ about its inadequacy.

▮In the instant case, the record does not indicate that the jury was misled or was motivated by passion, prejudice, partiality or corruption. Further, the parties do not cite to the *Legg* analysis in their briefs to this Court. Instead, the question presented to

this Court by the appellant is whether the jury's verdict was so low under the facts that reasonable persons could not differ as to its inadequacy. Accordingly, we will review the challenged verdict under the *Martin/Linville* analysis.

▮ Upon examination of the evidence, we find that the circuit court did not abuse its discretion in denying a new trial on the issue of damages. The jury in this action awarded the appellant the total amount of the decedent's medical and funeral expenses, and this amount was reduced by the decedent's percentage of negligence. Additionally, despite the fact that there was testimony that the decedent's loss of income amounted to $172,616.97, there was no evidence that the appellant was financially dependent on the decedent. Likewise, there was no evidence that the decedent provided any services to the appellant. Stated differently, there was no compelling evidence that the plaintiff suffered any "reasonably expected loss of ... income of the decedent." W.Va.Code § 55–7–6(c)(1)(B) (1992).

▮ Finally, given the decedent's significant percentage of negligence, the heavily contested nature of liability, and the inherently subjective nature of determining the amount of mental anguish damages, based upon our review of the evidence the jury was not unreasonable in choosing not to award such damages. In summary, viewing the evidence most strongly for the defendant, there is nothing in these facts which compels us to intrude upon the province of the jury under W.Va.Code § 55–7–6 to decide the fair amount of damages in a wrongful death ac-

common law. In fact, there was no right to recover in a wrongful death action until after the British Parliament passed Lord Campbell's Act in 1846. *Smith v. Eureka Pipe Line Co.*, 122 W.Va. 277, 8 S.E.2d 890 (1940). Because the right to sue for wrongful death is created purely by statute, we have, on various occasions, made distinctions in our jurisprudence between wrongful death cases and personal injury cases. For example, in *Miller v. Romero*, 186 W.Va. 523, 413 S.E.2d 178 (1991), we determined that the discovery rule which extends the statute of limitations in medical malpractice claims cannot be used to extend the filing period in a wrongful death action. We reasoned that the bringing of a

suit within two years from the death of the person, as required by W.Va.Code § 55–7–6, is an essential element of a wrongful death action and not a statute of limitation. We held in Syllabus Point 2 of *Miller* that "[t]he two-year period which limits the time in which a decedent's representative can file suit is extended only when evidence of fraud, misrepresentation, or concealment of material facts surrounding the death is presented." *See also Pennington v. Bear*, 200 W.Va. 154, 488 S.E.2d 429 (1997). In *Hawkins, Legg*, and *Kesner*, the peculiar nature of wrongful death actions resulted in a more limited review by this Court of challenged jury verdicts in such cases.

**423**

tion.[7]   Accordingly, we affirm the circuit court's judgment order.

## IV.

## CONCLUSION

For all of the reasons stated above, we conclude that the circuit court did not err in denying the appellant's motion for a new trial. Accordingly, the judgment of the Circuit Court of Brooke County is affirmed.

Affirmed.

Justice STARCHER dissents and files a dissenting opinion.

Justice McGRAW concurs in part, dissents in part, and files a separate opinion.

STARCHER, Justice, dissenting.

(Filed July 20, 2000)

The majority opinion is, in my view, a senseless exercise in hand-wringing over a perceived "tension in our law" regarding the standard to be followed in examining whether a jury verdict is inadequate. Our gut instinct tells us what the majority opinion takes pages and pages to condense: a jury's verdict will not stand when it is obvious that the jury just didn't get it, didn't understand the law or understand the evidence. I have no trouble with the rule.

The majority opinion, however, in the midst of this hand-wringing exercise, missed the whole point made by the appellants: the

jury thought that a woman's entire life was worth the cost of helicopter trip to an emergency room and a casket. An elderly woman, living alone on a pension, smashed while going home from a round of bingo, was given a price tag of only $24,717.36. The woman's family actually recovered approximately half this amount, because the jury somehow credited the elderly woman with almost half the fault for the collision that caused her death— when the elderly woman was in a crosswalk and legally had the right-of-way. The jury thought nothing of the fact that this woman brought home $1,427.00 a month in income, nor anything of the fact that she suffered pain as she was struck by the defendants' speeding car, nor anything of the anguish and loss suffered by the woman's children in the wake of her death.

The evidence in this case was quite simple: Martha Jean Fornari was walking home in Wellsburg, West Virginia. As she was crossing the street at a stop light, walking in a pedestrian cross walk, she was hit by the defendant. By law, she had the right-of-way [1]—yet the judge sent the case to the jury with a comparative negligence instruction. (Apparently, it is now negligence for elderly women to cross the street.) It was dark and raining, and the defendant was driving at a high rate of speed. The parties agreed to the amount and reasonableness of medical expenses and funeral expenses prior

---

**7.** As noted above, this Court is very reluctant to interfere with a verdict rendered by a jury in personal injury and wrongful death cases. We believe that:

> To discredit this verdict is to discredit our American jury system, a jury system in which many of our citizens participate each year.
>
> For all of its defects, the jury that our ancestors fought so hard to attain is a remarkable institution. What it actually means is that we have decided to give the ultimate say-so in our justice system to a diverse group of ordinary citizens—our fathers and mothers, our sisters and brothers, our co-workers, and our friends. We have decided that it is better to place our faith in the common-sense of ordinary citizens than in a trained class of professional jurors.

*Gerver v. Benavides, M.D.*, 207 W.Va. 228, 238, 530 S.E.2d 701, 710 (1999) (Starcher J. concurring).

**1.** *W.Va.Code*, 17C–3–5 [1975] states, in pertinent part and with emphasis added:

> Whenever traffic is controlled by traffic-control signals ... exhibiting different colored lights successively one at a time ... the following colors only shall be used and said terms and lights shall indicate and apply to drivers of vehicles and pedestrians as follows:
>
> (a) Green alone or "go":
>
> (1) Vehicular traffic facing the signal, except when prohibited under section two, article twelve of this chapter may proceed straight through or turn right or left unless a sign at such place prohibits either such turn. *But vehicular traffic, including vehicles turning right or left, shall yield the right-of-way to other vehicles and to pedestrians lawfully within the intersection or an adjacent crosswalk at the time such signal is exhibited.*
>
> (2) Pedestrians facing the signal may proceed across the roadway within any marked or unmarked crosswalk.

to trial, but the question of future earnings by Mrs. Fornari, the losses incurred by her children, and whether Mrs. Fornari was in any way responsible for her own death were left in the hands of the jury.

The jury returned a verdict for the exact amount of the medical and funeral expenses, an exact amount already agreed to by the parties, and dumped the other damages. The jury also credited the decedent with 49% of the fault for the collision. The jury's $24,717 .36 verdict was then cut by nearly half due to the comparative negligence finding.

We have set aside identical verdicts in the past. In *Combs v. Hahn,* 205 W.Va. 102, 516 S.E.2d 506 (1999), we reversed a $16,125.00 jury verdict awarding only past medical expenses, because the verdict did not contain an award of damages for pain and suffering. In *Godfrey v. Godfrey,* 193 W.Va. 407, 456 S.E.2d 488 (1995) (*per curiam* ), we held that $30,000.00 was a manifestly inadequate verdict for a little girl who had three toes chopped off by a negligently operated lawnmower, in part because the award did not fully cover future medical expenses, pain and suffering. And in *Martin v. Charleston Area Medical Ctr.,* 181 W.Va. 308, 382 S.E.2d 502 (1989), we set aside a $250,000.00 medical malpractice, wrongful death verdict because the award did not encompass the mental anguish and sense of loss suffered by the decedent's family members.

The verdict in the instant case shocks the conscience. When a jury totally fails to consider elements of damages obviously suffered by a plaintiff, then the jury has made a mistake, and the verdict should be set aside. The jury in the instant case just didn't get it, didn't understand the law and didn't understand the evidence, but that mistake was ignored by the majority opinion.

I therefore dissent.

McGRAW, Justice, concurring, in part, and dissenting, in part.

(Filed Dec. 13, 2000)

Like Justice Starcher has stated, I agree that the jury's verdict suggests possible confusion and a lack of understanding of the law. What especially concerns me is the appearance that this jury failed to grasp the concept of comparative negligence, and how a finding of comparative negligence would affect their award.

In this case, the jury awarded exactly the amount of the medical and funeral expenses, down to the last thirty-six cents, but the victim's family only received 51% of this amount because of the jury's finding of comparative negligence. As the majority opinion suggests, the jury may well have known exactly what it was doing, and believed that the family should have received only half of those expenses.

I agree that it is quite possible, and not entirely contrary to the evidence, that the jury felt sympathy not only for the victim, but also for the driver who killed her in this tragic accident on a dark night. What seems extremely unlikely to me, is that this jury would award a grieving family its medical bills and funeral expenses down to the last penny, and then, in a cold and calculating fashion, accept the fact that the court would have to reduce the award by 49%.

When we ask a jury to decide damages and comparative negligence we ask them to perform a complex, two part calculation that one doesn't run into often in daily life. Perhaps only in calculating "sale" prices at the store does one have to perform such mental gymnastics, and even then people wonder if the price in red on the tag is the final price, or if the clerk will make the reduction at the register. Thus sometimes it is difficult to say if a jury's damage award is the final number they wish to see a plaintiff recover, or if they have considered how that award will be reduced after a finding of comparative negligence on the part of the plaintiff.

Sometimes courts see verdicts which suggest that juries perform their own deductions, resulting in a double reduction for a plaintiff's award. In our case of *McDaniel v. Kleiss,* 198 W.Va. 282, 480 S.E.2d 170 (1996), a jury found the plaintiff to be 40% at fault and awarded the plaintiff about $150,000 in damages. The trial court then reduced this by 40%, so that the plaintiff received approximately $92,000 in damages (plus some interest).

The plaintiff presented evidence that the jury had actually figured his damages to be close to $260,000, and that they had already made their own deduction of 40% when they submitted the award of $150,000. The circuit court increased the award upon the request of the plaintiff, but this Court reversed, finding that such a modification, "wrongly invades the jury's deliberative process in violation of Rule 606(b) of the West Virginia Rules of Evidence." *Id.*, Syl. pt. 4.

In the similar case of *Brooks v. Harris*, 201 W.Va. 184, 495 S.E.2d 555 (1997), the plaintiff presented evidence of $34,171.29 in medical bills. The jury found the plaintiff 40% at fault, and awarded the plaintiff assorted amounts for damages, including exactly $20,502.77 for past medical expenses. In addition to the obvious error suggested by this figure (which is precisely 60% of the first figure) the court also discovered notes from the jury room in which a juror had preformed this very calculation. The circuit court granted the plaintiff a new trial on this basis. This Court, in a per curiam opinion, reversed and reinstated the original verdict.

In some cases, jurors may not make a conscious, direct effort to reduce an award by the amount of the plaintiff's comparative negligence, but still seem to misunderstand that their award will be reduced later by the judge. In the case of *Attridge v. Cencorp Division of Dover Technologies Int'l, Inc.*, 836 F.2d 113 (2d Cir.1987), the plaintiff suffered a severe injury to his hand. The jury found him to be 80% at fault, but awarded him, and his wife $150,000 for his damages and her claim for loss of consortium.

After the trial, conversations between a juror and a bailiff alerted the judge that the jurors had intended that the Attridges receive that entire amount (that is the jury found that the plaintiffs suffered $750,000 in damages, and reduced that amount to $150,000 before rendering a verdict). The judge recalled the jury, and asked each "what was your understanding as to what the verdict was?" All answered that they thought the plaintiffs were to received the full $150,000, and the judge entered a final verdict of that amount.

In this case, the Second Circuit affirmed the decision of the trial court and allowed the corrected verdict to stand for the plaintiff, but reversed the wife's damage award. The court ruled that the interviews "were intended to resolve doubts regarding the accuracy of the verdict announced, and not to question the process by which those verdicts were reached," and thus did not violate the Rules of Evidence. *Attridge v. Cencorp Division of Dover Technologies Int'l, Inc.*, 836 F.2d 113, 117 (2d Cir.1987); *accord, McCullough v. Consolidated Rail Corp.*, 937 F.2d 1167 (1991).

I concur with the majority that we should not toss aside our long-standing regard for the finality of a jury verdict. However, I suggest that our system needs to do a better job of communicating to the jury the actual impact of a comparative negligence finding, and a better job of allowing a judge the discretion to correct obvious errors in the communication of a jury's intended verdict.

In the instant case it strikes me as far more likely that the jury intended that the full amount of the medial bills and funeral expenses be awarded to the family of the victim, and that the jury simply did not understand the effect their finding of comparative negligence would have upon that award. The troubling aspect of this is that the will of jury may have been thwarted because of their apparent lack of understanding of the law.

While reasonable minds may differ on the "correctness" of nearly every jury verdict, as long as a jury has deliberated with a understanding of the law and communicated its true intent to the court, its verdict should stand. However, when we allow a lack of understanding of the law to thwart the will of the jury, we serve poorly the interests of justice. For these reasons, and those already articulated by Justice Starcher, I respectfully, dissent.