IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2015 Term

**FILED**

**June 11, 2015**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 14-0662

TERI SNEBERGER,
Plaintiff Below, Petitioner

v.

JERRY MORRISON, d/b/a JERRY MORRISON CONSTRUCTION,
AND JAMES PHILLIPS,
Defendants Below, Respondents

Appeal from the Circuit Court of Randolph County
Honorable Jaymie Godwin Wilfong, Judge
Civil Action No. 11-C-148

AFFIRMED

Submitted: May 12, 2015
Filed: June 11, 2015

Marvin W. Masters, Esq.
Christopher L. Brinkley, Esq.
Richard A. Monahan, Esq.
The Masters Law Firm, lc
Charleston, West Virginia
Attorneys for Teri Sneberger

Pat A. Nichols, Esq.
Parsons, West Virginia
Attorney for Jerry Morrison

Trevor K. Taylor, Esq.
Tiffany A. Cropp, Esq.
Taylor Law Office
Morgantown, West Virginia
Attorneys for James Phillips

JUSTICE LOUGHRY delivered the Opinion of the Court.
JUSTICES DAVIS and BENJAMIN dissent and reserve the right to file dissenting opinions.

SYLLABUS BY THE COURT

1.    "The West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings.  .  .  .   Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard."   Syl. Pt. 1, in part, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995).

2.    "Rule 702 of the *West Virginia Rules of Evidence* is the paramount authority for determining whether or not an expert is qualified to give an opinion."   Syl. Pt. 6, in part, *Mayhorn v. Logan Med. Found.*, 193 W.Va. 42, 454 S.E.2d 87 (1994).

3.    "In determining who is an expert, a circuit court should conduct a two-step inquiry.  First, a circuit court must determine whether the proposed expert (a) meets the minimal educational or experiential qualifications (b) in a field that is relevant to the subject under investigation (c) which will assist the trier of fact.  Second, a circuit court must determine that the expert's area of expertise covers the particular opinion as to which the expert seeks to testify."   Syl. Pt. 5, *Gentry v. Mangum,* 195 W.Va. 512, 466 S.E.2d 171 (1995).

i

4. "The admissibility of testimony by an expert witness is a matter within the sound discretion of the trial court, and the trial court's decision will not be reversed unless it is clearly wrong." Syl. Pt. 6, *Helmick v. Potomac Edison Co.*, 185 W.Va. 269, 406 S.E.2d 700 (1991).

5. "'"This Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance." Syllabus Point 2, *Sands v. Security Trust Co.*, 143 W.Va. 522, 102 S.E.2d 733 (1958).' Syllabus point 2, *Duquesne Light Co. v. State Tax Department*, 174 W.Va. 506, 327 S.E.2d 683 (1984)." Syl. Pt. 5, *State ex rel. State Farm Mut. Auto. Ins. Co. v. Bedell*, 228 W.Va. 252, 719 S.E.2d 722 (2011).

6. "'"Upon a motion for [pre-verdict judgment as a matter of law], all reasonable doubts and inferences should be resolved in favor of the party against whom the verdict is asked to be directed." Syllabus point 5, *Wager v. Sine*, 157 W.Va. 391, 201 S.E.2d 260 (1973).' Syl. pt. 1, *Stanley v. Chevathanarat*, 222 W.Va. 261, 664 S.E.2d 146 (2008)." Syl. Pt. 4, *Norfolk Southern Ry. Co. v. Higginbotham*, 228 W.Va. 522, 721 S.E.2d 541 (2011).

7. "'"In order to establish a *prima facie* case of negligence in West Virginia, it must be shown that the defendant has been guilty of some act or omission in

violation of a duty owed to the plaintiff. No action for negligence will lie without a duty broken." Syl. Pt. 1, *Parsley v. General Motors Acceptance Corp.,* 167 W.Va. 866, 280 S.E.2d 703 (1981).' Syl. Pt. 4, *Jack v. Fritts*, 193 W.Va. 494, 457 S.E.2d 431 (1995)." Syl. Pt. 3, *Aikens v. Debow*, 208 W.Va. 486, 541 S.E.2d 576 (2000).

8. """"The essential elements in an action for fraud are: '(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied on it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied on it.'" *Horton v. Tyree*, 104 W.Va. 238, 242, 139 S.E. 737 (1927).' Syl. Pt. 1, *Lengyel v. Lint*, 167 W.Va. 272, 280 S.E.2d 66 (1981)." Syl. Pt. 5, *Kidd v. Mull*, 215 W.Va. 151, 595 S.E.2d 308 (2004).

9. "Instructions must be based upon the evidence and an instruction which is not supported by evidence should not be given." Syl. Pt. 4, *State v. Collins*, 154 W.Va. 771, 180 S.E.2d 54 (1971).

10. "The formulation of jury instructions is within the broad discretion of a circuit court, and a circuit court's giving of an instruction is reviewed under an abuse of discretion standard. A verdict should not be disturbed based on the formulation of the language of the jury instructions so long as the instructions given as a whole are accurate and

fair to both parties." Syl. Pt. 6, *Tennant v. Marion Health Care Found., Inc.,* 194 W.Va. 97, 459 S.E.2d 374 (1995).

11. "'It will be presumed that a trial court acted correctly in giving or in refusing to give instructions to the jury, unless it appears from the record in the case that the instructions were prejudicially erroneous or that the instructions refused were correct and should have been given.' Syllabus Point 1, *State v. Turner*, 137 W.Va. 122, 70 S.E.2d 249 (1952)." Syl. Pt. 1, *Moran v. Atha Trucking, Inc.*, 208 W.Va. 379, 540 S.E.2d 903 (1997).

12. "This Court reviews the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syl. Pt. 1, *Burke-Parsons-Bowlby Corp. v. Rice*, 230 W.Va. 105, 736 S.E.2d 338 (2012).

13. "Athough the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syl. Pt. 4, *Sanders v. Georgia-Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976).

14.     "'We will not find a jury verdict to be inadequate unless it is a sum so low that under the facts of the case reasonable men cannot differ about its inadequacy.' Syllabus Point 2, *Fullmer v. Swift Energy Co., Inc.*, 185 W.Va. 45, 404 S.E.2d 534 (1991)." Syl. Pt. 2, *Vargo v. Pine*, 208 W.Va. 416, 541 S.E.2d 11 (2000).

LOUGHRY, Justice:

The petitioner and plaintiff below, Teri Sneberger, appeals a final order of the Circuit Court of Randolph County entered on June 2, 2014, denying her motion for a new trial in her civil action against the respondents and defendants below, Jerry Morrison, d/b/a Jerry Morrison Construction, and James Phillips, arising out of the construction of her log home. Following a three-day trial, the jury returned a verdict in favor of Ms. Sneberger only with respect to her negligence claim against Mr. Morrison. The jury awarded $40,000.00 in damages but also found Ms. Sneberger to be comparatively negligent and assessed her fault at forty percent.

In this appeal, Ms. Sneberger contends that the trial court committed reversible error by (1) limiting the time the parties had to present the case to the jury; (2) placing limitations on the expert testimony; (3) granting judgment as a matter of law in favor of Mr. Phillips; (4) denying her motion for judgment as a matter of law with respect to her negligence and breach of warranty claims against Mr. Morrison; (5) instructing the jury on comparative negligence; (6) including dicta in the outrageous conduct instruction; and (7) denying her motion for a new trial. Having carefully considered the parties' briefs and oral arguments, the submitted record, and the applicable authorities, we find no error. Accordingly, for the reasons set forth below, the final order is affirmed.

1

## I. Factual and Procedural Background

Sometime in the later part of 2009, Ms. Sneberger entered into a verbal contract with Mr. Morrison for the construction of a "primitive" log home[1] on property she owned in Beverly, Randolph County, West Virginia. Mr. Morrison told Ms. Sneberger that he had previously built two log homes, but he also advised her that he was not a licensed general contractor. According to Ms. Sneberger, Mr. Morrison stated that he could build her a log home according to her specifications for $140,000.00, including materials and labor. Mr. Morrison further stated that he had suitable logs for the project from trees he had cut down on his farm. He indicated that the home would be "turn key ready" after four months of construction. Ms. Sneberger orally agreed to these terms. The parties never had a written contract. Mr. Morrison began construction on Ms. Sneberger's log home in March 2010.

Ms. Sneberger entered into a second verbal contract with James Phillips, a mason, to build the basement walls of her log home and a chimney with two fireplaces. According to Ms. Sneberger, Mr. Phillips made the decisions about how to construct the chimney and install the flues. In addition to his mason work, Mr. Phillips operated a fork lift to aid Mr. Morrison in constructing the walls of the home. Mr. Phillips testified at trial that he used his forklift to place the logs according to Mr. Morrison's specifications.

---

[1] At trial, Ms. Sneberger testified that she told Mr. Morrison that she wanted a "rustic log home" built with "real tree logs," as opposed to manufactured, pre-shaped logs.

2

As construction on the log home progressed, Ms. Sneberger began to question Mr. Morrison's work. According to Ms. Sneberger, she observed that the logs in the walls and roof were not uniform in size; there was excessive "chinking" between some of the logs;[2] the roof rafters were not straight; and the roof sagged. Concerned about the increasing number of apparent defects in the construction, as well as the excessive costs of the labor and materials,[3] Ms. Sneberger fired Mr. Morrison in late July or early August 2010. Although Mr. Phillips had not completed construction of the chimney, Mr. Morrison contacted him and told him he was no longer needed to finish his work on Ms. Snebeger's home.[4]

After she fired Mr. Morrison, Ms. Sneberger hired other contractors to remediate the alleged defects and finish the construction of her home. According to Ms. Sneberger, a new roof structure had to be built because the one constructed by Mr. Morrison bowed five to seven inches. The plumbing and electrical systems had to be reworked as they did not comply with acceptable construction standards. The chimney had to be torn down because wooden beams and joists were discovered inside the chimney block. In addition, the

---

[2]"Chinking" refers to filling the gaps between the logs to seal the interior of the home to keep out moisture and other adverse environmental conditions. Mr. Morrison testified at trial that his chinking materials were insulation, wire mesh, and a certain type of cement.

[3]While the parties had agreed that the total cost for construction of the home would be $140,000.00, the evidence at trial indicated that Ms. Sneberger was paying Mr. Morrison on an hourly basis and purchasing materials as needed.

[4]At trial, Ms. Sneberger testified that she did not fire Mr. Phillips but rather simply did not hire him to finish the chimney construction.

chimney foundation was deemed inadequate because it was only four inches thick and sitting on dirt. Despite the remediation work, Ms. Sneberger claims she cannot live in her home because she was advised by one of her expert witnesses that there is a significant risk the structure will collapse.

On September 30, 2011, Ms. Sneberger filed suit against Mr. Morrison and Mr. Phillips, alleging the following theories of liability: fraud and misrepresentation, breach of contract, negligence, breach of the implied warranties of habitability and merchantability, and outrageous conduct. Ms. Sneberger also sought punitive damages. The case proceeded to trial on August 14, 2013. After Ms. Sneberger presented her case to the jury, both Mr. Morrison and Mr. Phillips moved for judgment as a matter of law. While Mr. Morrison's motion was denied, Mr. Phillips' motion was granted, and he was dismissed from the case. At the end of the trial, the jury returned a verdict in favor of Ms. Sneberger only with respect to her negligence claim against Mr. Morrison, awarding $40,000.00 in damages "for the cost of fixing the defects, completing the work, and placing [her] home in the condition that it should have been had the work been done properly." The jury further found, however, that Ms. Sneberger had failed to mitigate her damages and/or was comparatively negligent.[5] The

---

[5]The interrogatory on this issue that was presented to the jury read as follows: "Do you find from a preponderance of the evidence that Plaintiff, Teri Sneberger, failed to mitigate her damages and/or was comparatively negligent?" As indicated above, the jury answered in the affirmative.

4

jury attributed sixty percent fault to Mr. Morrison and forty percent fault to Ms. Sneberger. On November 8, 2013, Ms. Sneberger filed a motion for a new trial. Following a hearing, the motion was denied in the final order entered June 2, 2014. This appeal followed.

## II. Standard of Review

Ms. Sneberger asserts several assignments of error that require us to employ different standards of review. Therefore, the applicable standards of review will be incorporated within the discussion below.

## III. Discussion

As set forth above, Ms. Sneberger presents seven assignments of error. Each alleged error will be discussed, in turn.

### A. *Limitation on Length of Time to Present the Case to the Jury*

Ms. Sneberger first asserts that the trial court erred by limiting the amount of time the parties had to present witness tesimony to the jury. The record shows that the trial court set aside three days on its trial calendar for the trial based upon the representations made by the parties' attorneys at the pre-trial conference concerning how much time would be needed to present the case to the jury. After the trial began, during a brief recess in the

5

middle of the direct examination of the first witness, the trial judge inquired as to how the parties planned to use the three days allotted for trial because arrangements needed to be made for the jury to view the subject property. When it became apparent that the parties might need more than three days to present witness testimony alone, the trial judge advised the parties that the trial would be completed in three days, as scheduled, and she would split the time equally between the parties as had been her practice when she was a family court judge.[6] Taking into account the time needed for the jury viewing of the property, closing arguments, and instructions, the trial court allotted the parties five and one-half hours each to complete the direct and cross examination of witnesses.

Acknowledging that Rule 16(c)(15) of the West Virginia Rules of Civil Procedure provides that a trial court has the authority to set "a reasonable limit on the time allowed for presenting evidence," Ms. Sneberger argues that the imposed time limitations were nonetheless prejudicial for two reasons. First, she contends that because the trial court did not limit the amount of time for examination of witnesses until after the trial began, her

---

[6]Ms. Sneberger asserts that the trial judge's reference to her prior approach in family court with respect to time limitations indicates she imposed family court rules upon the trial of this matter. Conversely, Mr. Phillips maintains that the reference was merely anecdotal to express the importance of completing court proceedings within the time set aside on the court's trial calendar. Having carefully reviewed the record, we find no evidence to support Ms. Sneberger's contention that the trial court imposed a time standard based upon the rules that apply to family courts. Instead, the record indicates, as Mr. Phillips suggests, that the trial judge's comments simply conveyed her preference with respect to how time should be allotted between litigants in order to ensure a timely conclusion to the proceedings.

6

counsel had to hastily rework his questioning and eliminate some areas of inquiry. Second,

Ms. Sneberger asserts that because she, as the plaintiff, bore the burden of proof on all issues

except affirmative defenses, she should have been allotted more time to present her case.

The trial court's limitation on the time allowed for presenting evidence is a

procedural ruling that this Court reviews under an abuse of discretion standard. As we have

explained,

> The West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. . . . Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard.

Syl. Pt. 1, in part, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995). With

regard to Rule of Civil Procedure 16, which authorizes the trial court to impose time limits

on the presentation of evidence, we have observed that

> Rule 16 of the *West Virginia Rules of Civil Procedure* "is the principal source of the powers and tools that . . . courts are to use to achieve the fundamental purpose articulated by Rule 1 of the . . . Rules of Civil Procedure: securing 'the just, speedy, and inexpensive determination of every action and proceeding." James Wm. Moore, 3 *Moore's Federal Practice*, *3d Edition* § 16.03 (2007). Rule 16 promotes a concept of active judicial management of cases, with the participation of the parties and their counsel, to "reach a swift, inexpensive and just resolution of litigation." *Id.* The focus of Rule 16 is "to familiarize the litigants and the court with the issues actually involved in a lawsuit so that the parties can accurately appraise their cases," "remove extraneous disputes from the case" and "expedite the

determination of the merits, thereby saving time and expense for the litigants and easing the burden on the courts by facilitating the handling of congested dockets." Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*: *Civil 2d* § 1522.

*Caruso v. Pearce*, 223 W.Va. 544, 548, 678 S.E.2d 50, 54 (2009).

Having carefully reviewed the record in this matter, we find no merit to Ms. Sneberger's contention that the trial court unfairly limited the time for presenting witness testimony to the jury. The record shows the following colloquy occurred between the trial court and the parties at the pretrial conference:

> THE COURT: How many days do you anticipate the trial to take in this case? Exclusive of jury selection; we'll do that on a separate day. Do you think you can try it in a day or do you need more than a day?
> MR. BRINKLEY: This will take more than a day. We've got–the Plaintiff will take probably half a day and then Plaintiff's experts will go fairly quickly. We're going to take at least two or three days to try the case.
> MR. NICHOLS: I was guessing three.
> MR. BRINKLEY: Now–plus whatever they need.
> THE COURT: So you're saying your part is almost going to take three days.
> MR. BRINKLEY: Well–actually, I think probably in large part, the witnesses they would call would wind up being called in my case-in-chief anyway.
> MR. NICHOLS: The majority of them.
> THE COURT: Can we get [the trial] done in three days and jury selection on a separate day?
> MR. BRINKLEY: Very likely.
> THE COURT: What do you think?
> MR. TAYLOR: How many days did you say, your Honor? I didn't —

8

THE COURT: To get [the trial] done in three days and I'll do jury selection on a separate day?

MR. TAYLOR: Yes, I would think so, Your Honor.

THE COURT: Okay.

MR. NICHOLS: I agree with that.

Without question, the parties agreed that this case could be presented to the jury in three days. As such, the trial court's imposition of time limits on the questioning of witnesses in order to complete the trial in three days was not an abuse of discretion. While Ms. Sneberger claims she was forced to alter the manner in which she presented her case, she never proffered any evidence that she was unable to submit to the jury due to the time constraints. Further, there is no indication that Ms. Sneberger ever advised the trial court that she needed more than an equal share of time to present her case. Moreover, the record reflects that Ms. Sneberger was given ample time and opportunity to present rebuttal evidence. Accordingly, we find no error with respect to this issue.

### B. Limitations on Expert Testimony

During the trial of this matter, Ms. Sneberger presented testimony from three expert witnesses. She argues that the trial court erred by placing limitations on the testimony of each of these witnesses. This Court has recognized that "Rule 702 of the *West Virginia Rules of Evidence* is the paramount authority for determining whether or not an expert is qualified to give an opinion." Syl. Pt. 6, in part, *Mayhorn v. Logan Med. Found.*, 193 W.Va.

42, 454 S.E.2d 87 (1994). Rule 702 of the West Virginia Rules of Evidence provides that

"[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." We have advised that

> [i]n determining who is an expert, a circuit court should conduct a two-step inquiry. First, a circuit court must determine whether the proposed expert (a) meets the minimal educational or experiential qualifications (b) in a field that is relevant to the subject under investigation (c) which will assist the trier of fact. Second, a circuit court must determine that the expert's area of expertise covers the particular opinion as to which the expert seeks to testify.

Syl. Pt. 5, *Gentry v. Mangum,* 195 W.Va. 512, 466 S.E.2d 171 (1995). We have also held that "[t]he admissibility of testimony by an expert witness is a matter within the sound discretion of the trial court, and the trial court's decision will not be reversed unless it is clearly wrong." Syl. Pt. 6, *Helmick v. Potomac Edison Co.*, 185 W.Va. 269, 406 S.E.2d 700 (1991). With the standards for expert testimony in mind, we consider the trial court's rulings with respect to each witness separately.

**1. Rebecca Deem.** Ms. Sneberger presented expert testimony from Rebecca Deem, a certified home inspector. While Ms. Deem was qualified by the trial court as an expert in home inspection, she was precluded from offering an opinion as to whether the placement of wooden beams inside the chimney was "defective." Ms. Sneberger argues that

10

Ms. Deem satisfied the requirements of Rule of Evidence 702, and therefore, her expert

opinion on this issue should have been admitted at trial.



The trial court limited Ms. Deem's testimony because she testified she was not

qualified to give expert testimony concerning masonry issues. During voir dire examination

by counsel for Mr. Phillips, she testified as follows:

> Q. Ms. De[em], you are not a masonry expert, are you?
> A. No.
> Q. In fact, I asked you about masonry issues [during your deposition] and you told me over and over again that you're not a masonry expert, right?
> A. Correct.
> Q. You have never built a fireplace, correct?
> A. No, I have not.
> Q. You've never built a firebox, correct?
> A. No.
> Q. Never built flues to a fireplace, correct?
> A. Correct.
> Q. You've never been–you've never built block walls for masonry purposes, correct?
> A. Correct.
>      * * * *
> Q. And I asked you during your deposition, I said specifically, "You're not comfortable providing masonry construction expert opinions?" and you agreed with that, correct?
> A. Correct.
>      * * * *
> Q. And you agree you are not even familiar with the building codes as it relates to masonry projects, correct?
> A. Correct.

11

As set forth above, a witness is qualified as an expert by "knowledge, skill, experience, training, or education." W.Va.R.Evid. 702. In determining whether a witness is qualified to give expert testimony, this Court has advised circuit courts to err on the side of admissibility because of the "'liberal thrust' of the rules pertaining to experts." *Gentry*, 195 W.Va. at 522, 466 S.E.2d at 181. Noting that there is no "best expert" rule, we have explained that "[d]isputes as to the strength of an expert's credentials, mere differences in the methodology, or lack of textual authority for the opinion go to weight and not to the admissibility of their testimony." *Id.* at 527, 466 S.E.2d at 186. At the same time, this Court has made clear that such testimony should be excluded when the expert acknowledges that he or she is not qualified to render an opinion on a particular matter.

In *Kiser v. Caudill*, 210 W.Va. 191, 557 S.E.2d 245 (2004) ("*Kiser I*"), this Court affirmed a trial court's decision prohibiting the plaintiff's medical expert from testifying about the standard of care required by a neurosurgeon. Finding that the circuit court had not erred by limiting the testimony of Dr. Charles Brill, a neurologist, to the field of neurology and precluding him from rendering an opinion as to the applicable standard of care required of a neurosurgeon, we explained:

> After examining the record in this case, we do not find that the circuit court abused its discretion by limiting the testimony of Dr. Brill at trial to the field of neurology. During his deposition in February 1997, Dr. Brill stated that he did not plan to testify about the standard of care required of a neurosurgeon in this case. He also stated that he was merely an

12

expert in referring patients to neurosurgeons, but he did not hold himself out to be an expert in the field of neurosurgery. Dr. Brill further indicated that he did not know whether the standard of care for the treatment of a tethered spinal cord had changed from 1973 to the present. In addition, at trial, during cross-examination by the appellee regarding his qualifications, Dr. Brill acknowledged that he was not qualified or trained in the field of neurosurgery and was not familiar with the manner in which neurosurgical procedures are performed. Given Dr. Brill's own admissions about his limited knowledge of neurosurgery, we do not find that the circuit court erred by limiting his testimony at trial to the field of neurology.

*Id.* at 196, 557 S.E.2d at 250.

Likewise, in *Kiser v. Caudill*, 215 W.Va. 403, 599 S.E.2d 826 (2004) ("*Kiser II"*), we upheld the circuit court's finding that Dr. James Barnes was not qualified to testify as an expert witness because of his admission that he had no more than a casual familiarity with the applicable standard of care. We explained:

Dr. Barnes was not qualified to testify because his deposition showed that he had no more than a casual familiarity with the standard of care. The circuit court further noted that Dr. Barnes testified that he was not an expert on tethered spinal cords and that he never wrote on the subject, nor performed any scientific studies. Finally the court observed that Dr. Barnes could not cite any medical textbooks or literature to support his opinions regarding tethered spinal cord diagnosis and treatment.

*Id.* at 411, 599 S.E.2d at 834.

Given Ms. Deem's admission that she is not an expert with regard to masonry issues, the circuit court did not abuse its discretion in finding she lacked the requisite

13

education or experiential qualifications to render an opinion regarding whether the chimney construction was defective. Notably, despite this limitation placed on Ms. Deem's testimony, she was permitted, over Mr. Phillips' objection, to give her opinion as an expert home inspector as to whether the problems she identified with the masonry work were a hazard and/or whether such problems would have a negative impact on a home inspection or make the home fail such an inspection. Indeed, Ms. Deem testified that "[l]ooking down from the fireplace from the roofline, you could see the main ridge beam was directly or in extreme proximity to the flue liners, which is a safety hazard. It could cause a fire." She further testified that her observation that wood was in contact with the chimney would cause the house to fail a home inspection.[7]

**2. Broderick McGothlin.** Ms. Sneberger next tendered Broderick McGothlin, a licensed general contractor, as an expert in the construction of both "regular" and log homes, including masonry issues. Following voir dire concerning his education and background experience, the trial court qualified Mr. McGothlin as an expert in general construction, but not in the field of masonry because he stated he was not comfortable offering opinions concerning masonry issues. In that regard, Mr. McGothlin testified as follows:

---

[7]When Ms. Deem inspected Ms. Sneberger's home, the construction was not yet complete. Ms. Sneberger testified that Ms. Deem's observations with regard to the chimney caused her to have the chimney torn down and rebuilt.

Q. You don't specialize in masonry in any way in your general business, correct?

A. No.

Q. You sub[contract] all of that out, right?

A. Yes.

Q. You don't do it?

A. Nope.

Q. Have no special training in masonry?

A. No.

Q. You don't consider yourself to be an expert in masonry, correct?

A. No. Right.

Q. That's correct, right?

A. Yes.

Q. You don't feel comfortable testifying as a masonry expert, would that be correct?

A. Right.

Q. Correct?

A. Yes.

Q. Okay. You are not even aware of the actual code provisions as it would relate to chimneys or masonry projects, are you?

A. I'm a little familiar with some.

Q. But you're not–remember I asked you during your deposition whether you're familiar with the code provisions and you said you are not?

A. Right.

Q. Okay. Whenever you went out there to inspect this home, your focus was on the framing issues, correct?

A. Yes.

Q. Not masonry, was it?

A. Right. Yes.

Q. You are not comfortable being asked to provide masonry opinions, are you?

A. No.

Q. And as far as being aware of masonry standards, regulations or code in Randolph County, you have no idea what applies here, correct?

A. No.

Ms. Snebeger contends the trial court erred by precluding Mr. McGothlin from testifying as a general contractor about masonry issues such as the propriety of placing concrete around wooden beams inside of a chimney, the flammability thereof, and the actual appropriate construction techniques that should have been employed with respect to the chimney. In support of her argument, she notes that Mr. McGothlin testified he has more than twenty years of experience in the construction of hundreds of homes of different types; has supervisory responsibility over masons and chimney work on his projects; and has a working knowledge of the properties of concrete. Given Mr. McGothlin's considerable experience, Ms. Snebeger reasons she should have been permitted to elicit his opinion about masonry issues in the context of general construction.

Again, we find no merit to Ms. Sneberger's argument because of Mr. McGothlin's admission that he is not an expert with regard to masonry issues and his statement that he would be uncomfortable rendering an opinion on that subject. Consequently, the trial court properly limited Mr. McGothlin's expert opinion to the field of general construction. We note, however, that despite this limitation, the trial court permitted Mr. McGothlin to render an opinion regarding the propriety of running wood beams through a chimney as a matter of general construction. Mr. McGothlin testified that it was not acceptable to run wood through the chimney block. He explained, "Wood burns. National Code is 2–inches away from the exterior of the chimney. That's what I've always heard."

16

**3. Richard Rockwell.** Ms. Sneberger's final expert witness, Richard Rockwell, was qualified by the trial court as an expert in civil engineering, contracting, and the construction of custom and log homes. Ms. Sneberger did not tender Mr. Rockwell as expert on masonry issues, and she never sought to elicit any opinion from Mr. Rockwell regarding the masonry construction in her home. Nonetheless, she argues that the trial court erred by precluding Mr. Rockwell from rendering such an opinion. Ms. Sneberger states that she did not pose any questions to Mr. Rockwell about the masonry work because of the trial court's earlier ruling precluding Mr. McGothlin from providing such an opinion. She argues that her objection to the trial court's ruling prohibiting Mr. McGothlin from rendering an opinion with regard to the masonry construction preserved the issue for appeal with respect to both experts. In support of her argument, she relies upon this Court's holding in syllabus point seven of *State v. Taylor*, 130 W.Va. 74, 42 S.E.2d 549 (1947), *overruled on other grounds by State v. Aboy*, 160 W.Va. 497, 236 S.E.2d 431 (1977), which provides: "When an objection to evidence is distinctly made and overruled and an exception taken, the objection need not be repeated to the subsequent introduction of the same or similar evidence, unless it appears that such objection has been otherwise waived."

Upon review, we find Ms. Sneberger's reliance upon *Taylor* is misplaced. In *Taylor,* the defendant argued that the trial court had erred by allowing the State to elicit testimony from her on cross examination regarding her previous conviction of assault and

17

battery for which she was sentenced to one year in jail. The State maintained that the defendant had waived her objection to the admission of the evidence because she did not object when the same information was elicited during the cross examination of another witness who testified on her behalf. Rejecting the State's waiver argument, this Court explained that "[t]he failure of the defendant to object to the subsequent admission of the evidence did not waive her earlier objection or render admissible the evidence to which she had previously entered her exception." 130 W.Va. at 86, 42 S.E.2d at 557.

Here, rather than objecting to the admission of evidence, Ms. Sneberger is asserting that the trial court's ruling that one expert was not qualified to render an opinion on a certain subject matter correspondingly prevented her from eliciting testimony from another expert on the same issue. While the trial court may have ruled in the same fashion had she attempted to qualify Mr. Rockwell as a masonry expert, we cannot speculate in that regard because a witness is qualified to render an expert opinion based upon his or her particular "knowledge, skill, experience, training, or education." W.Va.R.Evid. 702. While Mr. McGothlin and Mr. Rockwell are both general contractors, they obviously have different credentials and experience. Because Ms. Sneberger never sought to qualify Mr. Rockwell as an expert with regard to masonry construction, the trial court never had an opportunity to

18

consider the issue.[8]  Consequently, Ms. Sneberger failed to preserve the issue for appeal.

It is well-established that "'"[t]his Court will not pass on a nonjurisdictional question which

has not been decided by the trial court in the first instance."  Syllabus Point 2, *Sands v.*

*Security Trust Co.*, 143 W.Va. 522, 102 S.E.2d 733 (1958).'  Syllabus point 2, *Duquesne*

*Light Co. v. State Tax Department*, 174 W.Va. 506, 327 S.E.2d 683 (1984)."  Syl. Pt. 5, *State*

*ex rel. State Farm Mut. Auto. Ins. Co. v. Bedell*, 228 W.Va. 252, 719 S.E.2d 722 (2011).

## *C. Pre-Verdict Judgment as a Matter of Law*

Ms. Sneberger argues that the trial court erred by granting Mr. Phillips's

motion for judgment as a matter of law following her case-in-chief.  She also contends the

trial court erred by denying her motion for judgment as a matter of law with respect to her

negligence and breach of warranty claims against Mr. Morrison.  Pursuant to Rule 50(a)(1)

of the West Virginia Rules of Civil Procedure:

> If during a trial by jury a party has been fully heard on an
> issue and there is no legally sufficient evidentiary basis for a
> reasonable jury to find for that party on that issue, the court may
> determine the issue against that party and may grant a motion for
> judgment as a matter of law against that party with respect to a
> claim or defense that cannot under the controlling law be
> maintained or defeated without a favorable finding on that issue.

---

[8]We note that during cross examination, Mr. Rockwell testified, "I do not want to be an expert in masonry.  I don't like masonry, I don't want to do masonry."  Given this testimony, it appears that Mr. Rockwell would not have been qualified as a masonry expert even if Ms. Sneberger sought to qualify him as such.

*Id.* This Court has held that "'"[u]pon a motion for [pre-verdict judgment as a matter of law], all reasonable doubts and inferences should be resolved in favor of the party against whom the verdict is asked to be directed." Syllabus point 5, *Wager v. Sine*, 157 W.Va. 391, 201 S.E.2d 260 (1973).' Syl. pt. 1, *Stanley v. Chevathanarat*, 222 W.Va. 261, 664 S.E.2d 146 (2008)." Syl. Pt. 4, *Norfolk Southern Ry. Co. v. Higginbotham*, 228 W.Va. 522, 721 S.E.2d 541 (2011). We have further advised that

> [w]e apply a *de novo* standard of review to the grant or denial of a pre-verdict or post-verdict motion for judgment as a matter of law. After considering the evidence in the light most favorable to the nonmovant party, we will sustain the granting or denial of a pre-verdict or post-verdict motion for judgment as a matter of law when only one reasonable conclusion as to the verdict can be reached.

*Gillingham v. Stephenson*, 209 W.Va. 741, 745, 551 S.E.2d 663, 667 (2001).

**1. Grant of Judgment as A Matter of Law.** The trial court found that Ms. Sneberger failed to present sufficient evidence to support her claims against Mr. Phillips. Ms. Sneberger predicated her theories of liability against Mr. Phillips upon the following assertions: (1) Mr. Phillips unreasonably relied upon Mr. Morrison's representations regarding the thickness and the underlying base of the chimney foundation; (2) Mr. Phillips unreasonably relied upon Mr. Morrison to remove the wooden floor joists and construct a cement pad for the chimney on the first floor and to remove the roof ridge beam; and (3) Mr.

20

Phillips became a joint tortfeasor with Mr. Morrison when he used his forklift to place the logs during the construction of the home.

With regard to the chimney foundation, Mr. Phillips testified at trial he was told by Mr. Morrison, who admittedly was solely responsible[9] for pouring the cement for the basement floor, that it was five to six inches thick and sitting on solid rock. Mr. Phillips further testified he consulted with his former employer to make sure that a concrete foundation of that thickness would be sufficient before he began building the chimney. While Ms. Sneberger maintained Mr. Phillips's actions were unreasonable, she failed to present any evidence to support her assertion. To the contrary, her own experts, Mr. McGothlin and Mr. Rockwell, testified it is reasonable for a masonry subcontractor to rely upon information supplied by the general contractor. They further stated it would *not* have been reasonable for Mr. Phillips to conduct an independent investigation to confirm the information provided by Mr. Morrison concerning the thickness of the foundation for the chimney.

With regard to the wooden beams and floor joists that were discovered inside the chimney block, Mr. Phillips testified at trial he built the chimney from the basement up

---

[9]Mr. Morrison testified that Ms. Sneberger hired two individuals to help him pour the concrete for the basement floor but they left the job site after a couple of hours and never returned.

to the subflooring for the first floor.  Mr. Morrison told him he would remove a portion of the wooden beams and floor joists and build another base for the second firebox on the first floor.  In order to allow Mr. Morrison to do this work, Mr. Phillips left the job site and returned a couple of weeks later.  Upon his return, Mr. Phillips found a concrete pad on the first floor ready for him to continue building the chimney.  Mr. Phillips testified he could only see concrete where the wooden floor joists had been and he did not know that any portion thereof was inside the concrete.  Mr. Phillips continued to construct the chimney until he reached the roof ridge beam.  Mr. Phillips left the job site again with the understanding that Mr. Morrison was going to cut out the ridge beam and replace it with steel.  Mr. Phillips was then going to return to finish chimney.  However, Ms. Sneberger fired Mr. Morrison before the ridge beam was removed.  Consequently, the chimney was never completed.

The record further shows that Ms. Sneberger never presented any evidence at trial to establish that Mr. Phillips knew, or should have known, that portions of the wooden floor joists were inside the chimney pad on the first floor.  Further, she never presented evidence that Mr. Phillips unreasonably relied upon Mr. Morrison to remove the floor joists and the the roof ridge beam.  Moreover, Mr. McGothlin, Ms. Sneberger's expert, testified that removing the ridge beam and replacing it with steel "would comply with Code" and would not be a fire hazard.

With regard to Mr. Phillips's participation in the placement of the logs for the walls of the home, the evidence at trial indicated that Mr. Phillips, who admittedly had no expertise in the construction of a log home, simply used his forklift to place the logs as directed by Mr. Morrison. Both Mr. Morrison and Mr. Phillips testified that Mr. Phillips never performed any other tasks pertaining to the wall construction, such as selecting, cutting, or notching the logs. Ms. Sneberger never presented any evidence that Mr. Phillips exercised any control over the placement of the logs. In addition, her experts testified that it would not be reasonable to hold an individual responsible for faulty construction of log walls when the individual's only job was to use a forklift to place the logs according to someone else's specifications. Further, there was no evidence that Mr. Phillips operated the forklift in a negligent manner.

Given all the above, we find no error in the trial court's grant of judgment as a matter of law in favor of Mr. Phillips.

> "'In order to establish a *prima facie* case of negligence in West Virginia, it must be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff. No action for negligence will lie without a duty broken.' Syl. Pt. 1, *Parsley v. General Motors Acceptance Corp.,* 167 W.Va. 866, 280 S.E.2d 703 (1981)." Syl. Pt. 4, *Jack v. Fritts*, 193 W.Va. 494, 457 S.E.2d 431 (1995).

Syl. Pt. 3, *Aikens v. Debow*, 208 W.Va. 486, 541 S.E.2d 576 (2000). We have explained that

> It is axiomatic in the context of negligence lawsuits that a party has a duty to exercise "due care." In other words, people

23

are required to exercise the same degree of care which would be exercised by a reasonably prudent person in like circumstances.

"Negligence" is either the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances, or doing what such a person under the existing circumstances would not have done.

*Honaker v. Mahon,* 210 W.Va. 53, 58, 552 S.E.2d 788, 793 (2001). In this case, Ms. Sneberger did not present any evidence that Mr. Phillips failed to act as a reasonably prudent mason would in like circumstances. To the contrary, her experts testified that it was reasonable for Mr. Phillips, as the masonry subcontractor, to rely upon the information provided by Mr. Morrison, who was acting as the general contractor, with respect to the sufficiency of the foundation for the chimney. Further, there was no evidence that Mr. Phillips's reliance upon Mr. Morrison to remove the floor joists and ridge beam from the path of the chimney was unreasonable. In addition, there was no evidence that Mr. Phillips was aware of the existence of wooden beams inside the chimney block and, therefore, he had no duty to disclose this fact to Ms. Sneberger or take any steps to remediate it. Finally, there is no evidence that Mr. Phillips breached any duty of care owed to Ms. Sneberger while operating the forklift to assist Mr. Morrison in setting the logs for the walls of the home. The evidence indicated that Mr. Phillips simply moved the logs as directed by Mr. Morrison. In sum, Ms. Sneberger was unable to demonstrate that Mr. Philips breached any duty of care. Therefore, she failed to establish a *prima facie* case of negligence against him.

Likewise, Ms. Sneberger failed to present evidence to support her claim against Mr. Phillips for breach of contract. A claim for breach of contract requires proof of the formation of a contract, a breach of the terms of that contract, and resulting damages. Syl. Pt. 1, *State ex rel. Thornhill Group, Inc. v. King*, 233 W.Va. 564, 759 S.E.2d 795 (2014); *see also Wetzel County Savings & Loan Co. v. Stern Bros., Inc.*, 156 W.Va. 693, 698, 195 S.E.2d 732, 736 (1973). As set forth above, Ms. Sneberger failed to present evidence that any of Mr. Phillips's actions failed to comply with the terms of their contract. Her experts testified that Mr. Phillips acted reasonably in relying upon the representations made by Mr. Morrison with respect to the sufficiency of the foundation for the chimney. The evidence established that the deficiencies in the chimney foundation were the result of Mr. Morrison's work and not that of Mr. Phillips. Likewise, the existence of wooden beams inside the chimney was also attributable to Mr. Morrison. There was no evidence that Mr. Phillips was aware of the inadequacy of the chimney foundation or the presence of wooden beams inside the chimney. Therefore, based on the evidence presented, the only conclusion that could be reached was that Mr. Phillips completed his work according to the terms of his contract with Ms. Sneberger until he was advised by Mr. Morrison not to return to complete the project.

With respect to her claim against Mr. Phillips for breach of the warranties of habitability and merchantability, Ms. Sneberger had to establish that her home was constructed in a unworkmanlike manner and was not reasonably fit for its intended use of

human habitation. Syl. Pt. 1, *Gamble v. Main*, 171 W.Va. 469, 300 S.E.2d 110 (1983). As already stated, there was no evidence that Mr. Phillips failed to construct the chimney in a workmanlike manner. Certainly, the evidence established that the chimney was "defective" and unusable as its construction necessitated demolition and rebuilding. However, the evidence also clearly showed that the defects were attributable to Mr. Morrison's failure to prepare an adequate foundation for the chimney and Mr. Morrison's failure to remove the wooden beams from the chimney block. As such, there was no evidentiary basis for the jury to find in favor of Mr. Sneberger with respect to her breach of warranty claims against Mr. Phillips.[10]

Likewise, there was no evidentiary basis for Ms. Sneberger's remaining claims against Mr. Phillips for fraud, misrepresentation, and outrageous conduct. It is well-established that

> "'[t]he essential elements in an action for fraud are: "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied on it and was justified under the circumstances

---

[10]We recognize that a "builder cannot avoid liability under an implied warranty of habitability or fitness or under an implied warranty to construct in a workmanlike manner by claiming lack of knowledge of the defective construction work, because under these doctrines he is presumed to know his own construction work." *Gamble*, 171 W.Va. at 475 n.9, 300 S.E.2d at 116 n.9. In this instance, however, the defective construction work was attributable to Mr. Morrison, not Mr. Philllips.

26

> in relying upon it;  and (3) that he was damaged because he relied on it.'" *Horton v. Tyree*, 104 W.Va. 238, 242, 139 S.E. 737 (1927)."  Syl. Pt. 1, *Lengyel v. Lint*, 167 W.Va. 272, 280 S.E.2d 66 (1981).

Syl. Pt. 5, *Kidd v. Mull*, 215 W.Va. 151, 595 S.E.2d 308 (2004).   A claim for outrageous conduct requires intentional or reckless action that causes severe emotional distress to another.  Syl. Pt. 6, *Harless v. First National Bank*, 169 W.Va. 673, 289 S.E.2d 692 (1982). None of the evidence that was presented by Ms. Sneberger, which has been outlined above, supported these claims.  Absent knowledge of the "defects" in the chimney that were not the result of his work, Mr. Phillips could not have concealed or misrepresented the same from Ms. Sneberger.  Furthermore, there was no evidence presented from which a reasonable jury could have concluded that Mr. Phillips's actions rose to the level required to sustain a claim for outrageous conduct.[11]

     **2.  Denial of Judgment as a Matter of Law.**  Ms. Sneberger argues there was overwhelming evidence from her experts and the contractors who performed the remediation work establishing that as a result of Mr. Morrison's defective construction, her home is

---

[11]Mr. Morrison asserts in his brief that "the trial court erred in granting a directed verdict for James Phillips and not granting a directed verdict for Jerry Morrison."  In her reply brief, Ms. Sneberger addresses this assertion as if it were a cross-assignment of error by Mr. Morrison concerning the trial court's denial of Mr. Morrison's pre-verdict motion for judgment as a matter of law.  To the extent that Mr. Morrison was attempting to assert a cross-assignment of error, he has failed to comply with Rule 10(f) of the Rules of Appellate Procedure.  Accordingly, we will not address this issue.

structurally unsafe, in danger of collapsing, and needs to be rebuilt. She further asserts the evidence proved that her home was not built in a workmanlike manner nor as a reasonably prudent builder would have built it. Ms. Sneberger maintains Mr. Morrison's only response to this evidence was his testimony that he "did the best job he could." She contends he failed to offer evidence to squarely address the elements of her negligence and breach of warranty claims against him; therefore, she reasons that the trial court should have granted her pre-verdict motion for judgment as a matter of law on these claims.

Upon review, we find that Mr. Morrison presented sufficient evidence to rebut the evidence put forth by Ms. Sneberger with respect to her claims against him for negligence and breach of the warranties of habitability and merchantabilty. In fact, Mr. Morrison demonstrated that Ms. Sneberger played an active role in the construction of her home, making the final decisions concerning the home's size and design, and the materials used. The jury heard testimony that Ms. Sneberger employed several people to do various jobs during the different stages of construction because Mr. Morrison did not have a crew to help him. For instance, all of the grading and earth removal work was completed by Ms. Sneberger's neighbor. In addition. Ms. Sneberger testified that both she and her mother did some of the chinking work on the home.

Moreover, based on Ms. Sneberger's own testimony, the jury could have reasonably concluded that some of the remediation work actually caused or contributed to the alleged defects. One of Ms. Sneberger primary contentions was that the roof sagged. Yet, she testified that Jack Butcher, a contractor she hired to do some of the remediation work on her home, removed the support walls from the loft area in order to rebuild the subflooring, which was "four and five inches out of square." She testified about this matter in response to questions from Mr. Morrison's attorney:

> Q. Do you know whether or not when he took the wall out that it affected the roof, or do you know if they were support walls?
> A. He was worried about that, because he told me to make sure–because he [had] another job to go to–to make sure that I put something back up there because the way that Jerry had done the slant of the roof, that it could collapse in without any support walls.
> Q. So who did you get to put up something when he took the walls down?
> A. Okay. Jack Peters is currently still working on that for me.
> Q. Do what?
> A. Jack Peters is currently still working on that for me.
> Q. So for quite some period of time after Mr. Butcher took down the support walls, there was nothing put back up there to hold it?
> A. That's correct.
> Q. For [a] good while, is that right?
> A. That's correct.
> Q. Even though Mr. Butcher told you, "You better get something up there to hold that roof up because those are support walls," right?
> A. That's correct but I didn't have any money to pay anybody or buy the materials to do that sir.
> Q. But you're blaming Jerry [Morrison] because that roof is now sagging, even though you may have caused the problem?

A. The roof was sagging because it was spongy when Jack was re-doing the roof.
Q. You don't know that though, do you?
A. Jack told me that and I believe him.
Q. Jack told you that?
A. Yes, he did.

Considering this evidence in the light most favorable to Mr. Morrison, the nonmoving party, we cannot say the trial court erred by denying Ms. Sneberger's motion for judgment as a matter of law with respect to her negligence and breach of warranty claims again Mr. Morrison.

## D. The Jury Instructions

Ms. Sneberger contends the trial court erred by instructing the jury on comparative negligence and including dicta in the outrageous conduct instruction. It is axiomatic that "[i]Instructions must be based upon the evidence and an instruction which is not supported by evidence should not be given." Syl. Pt. 4, *State v. Collins*, 154 W.Va. 771, 180 S.E.2d 54 (1971). "[O]ur review of the legal propriety of the trial court's instructions is *de novo*." *Skaggs v. Elk Run Coal Co., Inc.*, 198 W.Va. 51, 63, 479 S.E.2d 561, 573 (1996) (citation omitted). However,

> [t]he formulation of jury instructions is within the broad discretion of a circuit court, and a circuit court's giving of an instruction is reviewed under an abuse of discretion standard. A verdict should not be disturbed based on the formulation of the language of the jury instructions so long as the instructions given as a whole are accurate and fair to both parties.

30

Syl. Pt. 6, *Tennant v. Marion Health Care Found., Inc.,* 194 W.Va. 97, 459, S.E.2d 374 (1995). In other words, "[d]eference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion." Syl. Pt. 4, in part, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). Furthermore,

> "[i]t will be presumed that a trial court acted correctly in giving or in refusing to give instructions to the jury, unless it appears from the record in the case that the instructions were prejudicially erroneous or that the instructions refused were correct and should have been given." Syllabus Point 1, *State v. Turner*, 137 W.Va. 122, 70 S.E.2d 249 (1952).

Syl. Pt. 1, *Moran v. Atha Trucking, Inc.*, 208 W.Va. 379, 540 S.E.2d 903 (1997).

**1. The Comparative Negligence Instruction.** Ms. Sneberger argues the trial court erred in giving a comparative negligence instruction because she asserts there was no evidence that she bore any degree of fault for the condition of her home. She maintains that Mr. Morrison's speculation that the remediation efforts may have contributed to the defective condition of her home did not warrant the instruction.

As discussed above, Mr. Morrison presented considerable evidence that Ms. Sneberger took an active role in the construction of her home, not only in terms of decision-

making with regard to the home's appearance and the materials to be used,[12] but also in providing the actual labor. Mr. Morrison testified that Ms. Sneberger changed the size and design of her home from what was originally contemplated, adding a basement and an attached garage. She also increased the height of the walls after construction began, contrary to Mr. Morrison's recommendation. As a result of this decision, Mr. Morrison did not have enough logs and, ultimately, cut down two trees in Ms. Sneberger's yard in order to complete the construction of the walls.[13] The evidence also showed that after Mr. Morrison was fired, Ms. Snebeger hired various persons who removed the interior walls in the loft area that supported the roof, which may have contributed to the roof sagging. Based on this evidence, Mr. Morrison maintained that Ms. Sneberger was responsible for the defective condition of her home.

---

[12]Mr. Morrison testified Ms. Sneberger insisted that a particular type of lumber be used as sheeting material for the porch roofs. He advised her that the wood she chose would shrink because it was not kiln-dried lumber and that it would not last more than five years. She responded, "That's okay. I'll replace it in five years if I have to, but that's what I want."

[13]Mr. Morrison testified that he explained to Ms. Sneberger that he would not have enough logs to complete the project if she increased the size and height of the home. He said her response was "[w]ell let's just go get some more logs." He then explained to her that "it's not that simple. These logs have been cut and dried for a year . . . . You just can't go and cut a tree out of the woods and put it in the house brand-new the first day. It doesn't work. You need time to have time to dry." Eventually, with Ms. Sneberger's permission, Mr. Morrison did in fact cut down two pine trees in her yard and used them to finish the structure.

"We have adhered to the principle that [even] slight evidence will support an instruction of the defendant's theory of the case[.]" *King v. Bittinger*, 160 W.Va. 129, 134, 231 S.E.2d 239, 242 (1976). Here, there was more than enough evidence presented at trial to allow the jury to consider whether Ms. Sneberger was negligent. Accordingly, the trial court did not err by instructing the jury to determine the percentage of fault, if any, to be attributed to Ms. Sneberger.

**2. The Outrageous Conduct Instruction.** Ms. Sneberger contends that the circuit court erred by including dicta in its jury instruction pertaining to her outrageous conduct claim. The trial court included the following language in the instruction:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all reasonable bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous."

In support of her argument, Ms. Snebeger relies upon *Tennant,* wherein we stated that "a circuit court should refrain wherever possible from gratuitously adding language to its charge that is not an element of the claim or defense and that can better be presented to the jury by way of closing argument." 194 W.Va. at 117, 459 S.E.2d at 394. She contends the trial court should have given a succinct instruction limited to the elements of the tort of outrage as set forth in syllabus point six of *Harless*: "One who by extreme and outrageous conduct

33

intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." 169 W.Va. at 674, 289 S.E.2d at 694.

The trial court's instruction was derived from language contained in the commentary to the Restatement (Second) of Torts § 46(1) (1965) that has been referenced and quoted with approval in many of our prior cases, including *Harless*. 169 W.Va. at 695, 289 S.E.2d at 704-05; *see also Tanner v. Rite Aid of West Virginia, Inc.*, 194 W.Va. 643, 650, 461 S.E.2d 149, 156 (1995) (discussing fact that jurisprudence and comments attached to Restatement (Second) of Torts § 46(1) (1965) have "substantially influenced" our development of this tort); *Courtney v. Courtney*, 190 W.Va. 126, 130, 437 S.E.2d 436, 440 (1993) ("*Courtney II*") (quoting comment (j) of Restatement (Second) of Torts § 46(1) (1965) concerning nature of severe emotional distress); *Courtney v. Courtney*, 186 W.Va. 597, 601-02, 413 S.E.2d 418, 423 (1991) ("*Courtney I*") (quoting comment (d) of Restatement (Second) of Torts § 46(1) (1965) to explain type of conduct creating cognizable claim); *Kanawha Valley Power Co. v. Justice*, 181 W.Va. 509, 513, 383 S.E.2d 313, 317 (1989) (noting "[w]e patterned our rule on that of the Restatement (Second) of Torts § 46"). Thus, while the instruction was not limited to a mere recitation of the elements of the tort of outrage, it was not an incorrect statement of the law. Given the nature of this case, we find that such an instruction was warranted in light of our recognition that "where no physical

34

injury accompanies the wrong, the tort of outrage is a slippery beast, which can easily get out of hand without firm judicial oversight."[14] *Keyes v. Keyes*, 182 W.Va. 802, 805, 392 S.E.2d 693, 696 (1990). Accordingly, we find no error with respect to this issue.

### E. Denial of Motion to A New Trial

Ms. Sneberger's final assignment of error concerns the trial court's denial of her motion for a new trial. Maintaining the jury's decision was against the clear weight of the evidence, Ms. Sneberger contends that the trial court should have set the verdict aside and found Mr. Morrison one hundred percent liable and ordered a new trial on damages only or, alternatively, granted a new trial on all of the issues.

In syllabus point one of *Burke-Parsons-Bowlby Corp. v. Rice*, 230 W.Va. 105, 736 S.E.2d 338 (2012), we noted that

> [t]his Court reviews the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

We have also stated that "[a]lthough the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be

---

[14]Ms. Sneberger did not present any medical evidence to support her outrageous conduct claim.

35

reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syl. Pt. 4, *Sanders v. Georgia-Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976). Yet, this Court also has recognized that a new trial should rarely be granted and then granted only where it is "'reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done.'" *In re State Public Building Asbestos Litigation*, 193 W.Va. 119, 124, 454 S.E.2d 413, 418 (quoting 11 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2803 at 32-33 (1973)). As we have explained "'in determining whether a valid claim has been established, the assessment of evidence and testimony is, of course, within the province of the trier of fact, and that we, as an appellate court, owe great deference to the verdict.'" *JWCF, LP v. Farruggia,* 232 W.Va. 417, 426, 752 S.E.2d 571, 580-81 (2013) (quoting *Hutchison v. City of Huntington,* 198 W.Va. 139, 157, 479 S.E.2d 649, 667 (1996)). Therefore, we have determined that "evidence is sufficient if a rational trier of fact could have found the essential elements of the claim by a preponderance of the evidence based on the evidence presented at trial." *Farruggia* 232 W.Va. at 427, 752 S.E.2d at 581 (additional citation omitted).

Although the jury returned a verdict in favor of Ms. Sneberger, finding Mr. Morrison negligent in the manner in which he constructed her home and awarding her $40,0000.00 in damages, she argues she is entitled to a new trial because the jury also

36

attributed forty percent of the fault to her, contrary to the evidence presented at trial.[15] In addition, Ms. Sneberger contends the jury's assessment as to the amount of damages she sustained was inadequate and not supported by the evidence. We disagree.

As we discussed above, the record reflects the jury heard evidence that Ms. Sneberger took an active role in the construction of her home, making the decisions about the materials to be used, changing the size and design of the home during the construction process, and doing some of the construction work herself. There was evidence presented that Ms. Sneberger insisted that certain lumber be used even when advised that the material was inappropriate for the intended use. Furthermore, Ms. Sneberger acknowledged that support walls were removed from the home by a contractor she hired to remediate Mr. Morrison's work. While she maintained the roof of the home was sagging as a result of Mr. Morrison's work, the jury could have found that the removal of the support walls caused or, at least contributed, to this alleged defect. Based on this evidence, we cannot say the jury's comparative fault finding was against the clear weight of the evidence.

As for the amount of damages awarded, the record shows the jury heard a wide range of testimony with respect to the expenses and damages incurred by Ms. Sneberger.

---

[15]The jury's verdict was reduced by Ms. Sneberger's percentage of fault resulting in a final judgment order against Mr. Morrison in the amount of $24,000.00.

Specifically, Mr. Morrison testified that Ms. Sneberger paid him $6,000.00 for the logs and slightly less than $10,000.00 for his labor before she fired him. He estimated that at the time he was fired, Ms. Sneberger had spent a total of $41,000.00 for labor and materials. Ms. Sneberger's expert, Mr. McGothlin, testified that the cost of materials to rebuild the house in the manner it should have been constructed would be $40,000.00. Adding labor and the cost to tear down the existing stucture and remove the debris, Mr. McGothlin opined the total cost would be $350,000.00. Further, Ms. Sneberger testified that she paid Mr. Morrison $46,136.00; Mr. Phillips $11,760.89; and the contractors who did the remediation work $48,031.61. In addition to this evidence, the jury traveled to the home and viewed its current state.

As previously noted, the verdict form indicates that the $40,000.00 awarded by the jury was "for the cost of fixing the defects, completing the work, and placing the home in the condition that it should have been had the work been done properly." The jury verdict form reflects that the jury chose to award zero dollars "for all of Ms. Sneberger's additional damages which flowed from [Mr. Morrison's] wrongful acts, including, but not limited to, damages arising from Ms. Sneberger's efforts to mitigate her damages;" zero dollars "for Ms. Sneberger's annoyance and inconvenience associated with the construction process;" zero dollars "for Ms. Sneberger's loss of the use of the property;" and zero dollars "for Ms. Sneberger's emotional distress." Given that liability was highly contested combined with the

38

significant percentage of fault attributed to Ms. Sneberger, we cannot say the amount of damages awarded by the jury was against the clear weight of the evidence. "'We will not find a jury verdict to be inadequate unless it is a sum so low that under the facts of the case reasonable men cannot differ about its inadequacy.' Syllabus Point 2, *Fullmer v. Swift Energy Co., Inc.*, 185 W.Va. 45, 404 S.E.2d 534 (1991)." Syl. Pt. 2, *Vargo v. Pine*, 208 W.Va. 416, 541 S.E.2d 11 (2000).

## IV. Conclusion

For the reasons set forth above, the final order of the Circuit Court of Randolph County entered on June 2, 2014, is affirmed.

Affirmed.