# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Stephen Upton,**
**Plaintiff Below, Petitioner**

**FILED**

**April 21, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)   No. 16-0354** (Mason County 10-C-73)

**Liberty Mutual Group, Inc.,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Stephen Upton, pro se, appeals two orders of the Circuit Court of Mason County. In the first order, entered on March 11, 2016, the circuit court awarded partial summary judgment to Respondent Liberty Mutual Group, Inc., by deciding that (1) no rational jury could find for petitioner on his claims for bad faith, fraud, and professional negligence; and (2) the maximum amount that petitioner could recover on his breach of contract claim was $6,197.59, plus interest. In the second order, entered on April 27, 2016, the circuit court dismissed petitioner's action with prejudice after respondent tendered a check to petitioner for $6,197.59, plus applicable interest, in the total amount of $9,088.21. Respondent, by counsel William M. Harter and Jared M. Tully, filed a response in support of the circuit court's orders. Petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

According to petitioner, on the morning of August 24, 2009, he returned home after working the night shift and discovered that someone had broken into his house by damaging the exterior doors.[1] Petitioner also discovered water on his kitchen floor from a "[m]inute" crack in a pipe fitting under his sink. Petitioner reported both problems to respondent, his homeowners' insurance carrier.

---

[1]Petitioner, because of his perception that law enforcement did little to investigate prior break-ins and/or vandalism directed at his residence, did not file a police report. According to petitioner, nothing was stolen.

Petitioner's homeowners' policy required a $5,000 per occurrence deductible. When requested to do so by respondent, petitioner refused to file one claim for the damage to his exterior doors and a separate claim for the water damage to his kitchen because he discovered both problems at the same time. Nevertheless, respondent subsequently treated the damaged doors and the water damage as separate occurrences on the ground that there was no evidence that whoever damaged the exterior doors then went inside and caused the "[m]inute" crack under petitioner's kitchen sink.

The parties each hired a separate contractor to appraise the damage to petitioner's home. Petitioner's contractor, Robert Blankenship of Alternative Building Concepts, found that it would cost $1,585.90 to fix petitioner's exterior doors and $18,385.60 to make repairs to his kitchen. Respondent's contractor, Raintree Construction Co., LLC, found it would cost $1,921.72 to fix petitioner's exterior doors and $15,523.69 to make repairs to his kitchen. Neither contractor was willing to do repair work involving petitioner's granite countertops, but Mr. Blankenship opined that such additional work would cost $3,662.06. Given that the damage to the exterior doors came to an amount less the $5,000 per occurrence deductible, respondent paid nothing for that damage. Respondent ultimately paid a total of $11,175.07 for the water damage after applying the $5,000 deductible to that occurrence.

On July 12, 2010, petitioner filed a civil action against respondent in the Circuit Court of Mason County asserting causes of action for breach of contract, bad faith, fraud, and professional negligence. Petitioner alleged that respondent attempted to coerce him into filing a separate claim for the water damage so that it could reduce the amount it owed him by applying his deductible twice.

Respondent removed the action to federal court. The action was later remanded to the circuit court. Discovery did not commence until 2013, and the circuit court did not enter a scheduling order until July 30, 2014. In the scheduling order, the circuit court set the deadline for the completion of discovery as April 30, 2015. Respondent took Mr. Blankenship's deposition on March 12, 2013, and took petitioner's deposition on August 8, 2014.

The scheduling order also directed the parties to file pretrial memoranda. In respondent's pretrial memorandum, filed on July 13, 2015, it "reserve[d] the right to elicit . . . the expert testimony of [Mr.] Blankenship to the extent permitted by the West Virginia Rules of Evidence." In petitioner's pretrial memorandum, also filed on July 13, 2015, petitioner listed Mr. Blankenship as a fact witness and stated that he intended to use Mr. Blankenship's deposition testimony and his own deposition testimony at trial. Petitioner also filed various motions to compel respondent to comply with his discovery requests. Respondent responded by filing a motion to bifurcate petitioner's cause of action for breach of contract from his claims for bad faith, fraud, and professional negligence.

Following the close of discovery, respondent filed a motion for partial summary judgment on June 8, 2015, arguing that there was no genuine issue of material fact and that (1) no rational jury could find for petitioner on his claims for bad faith, fraud, and professional negligence; and

(2) the maximum amount that petitioner could recover on his breach of contract claim was $3,796.43, plus interest. Petitioner filed a response on June 17, 2015. On June 29, 2015, respondent filed a reply to petitioner's response. Petitioner filed a response to the reply on July 13, 2015.

The circuit court held a hearing on the parties' various motions on July 13, 2015. The circuit court declined to consider petitioner's motions, finding that he failed to properly notice them. While petitioner objected to that finding, the circuit court further found that the parties still needed to engage in mediation. Consequently, the circuit court continued the trial date set forth in the scheduling order and ordered that mediation be commenced.

After mediation proved unsuccessful, the circuit court held a hearing on February 29, 2016. The circuit court found that the case was not progressing. The circuit court determined that the parties' disputes over petitioner's discovery requests related to his seeking of information for his causes of action alleging bad faith, fraud, and professional negligence. The circuit court further found that respondent waited to file its motion for partial summary judgment until the close of discovery pursuant to the scheduling order. Notwithstanding the fact that a number of petitioner's pending motions would result in discovery reopening, the circuit court found that the motion for partial summary judgment was ripe for decision given that the parties "properly briefed" the issues raised therein. Accordingly, the circuit court concluded that the best way for it to move the case forward was to rule on respondent's motion for partial summary judgment and, if necessary, its motion to bifurcate the causes of action alleging the mishandling of petitioner's insurance claim from his breach of contract claim.

By order entered on March 11, 2016, the circuit court awarded respondent partial summary judgment. The circuit court first found that no rational jury could find for petitioner on his causes of action alleging the mishandling of his insurance claim. Petitioner based those claims on his allegation that respondent improperly asked him to file a separate claim for the water damage in his kitchen and then, after his refusal to file an additional claim, nevertheless treated the water damage as a separate occurrence from the damage to his exterior doors so that it could apply his deductible twice. The circuit court found that there was no evidence that whoever damaged the exterior doors then went inside and caused the water damage. First, at his deposition, petitioner testified that the water damage was caused by a "[m]inute" crack under his kitchen sink. Second, at the deposition of petitioner's contractor, Mr. Blankenship testified that one would expect to see more extensive damage when a pipe or a pipe fitting is damaged by vandalism. Given no genuine issue of material fact existed that vandalism was the cause of only the damage to the exterior doors, the circuit court concluded that respondent properly treated the water damage as a separate occurrence, to which another deductible applied. Therefore, the circuit court awarded respondent summary judgment on petitioner's claims for bad faith, fraud, and professional negligence.

With regard to petitioner's breach of contract claim, the circuit court found that, because the cost of fixing petitioner's exterior doors was below his $5,000 deductible, respondent owed petitioner nothing for that occurrence. However, construing the evidence in the light most favorable to petitioner, the circuit court used the higher cost estimate produced by Mr. Blankenship, rather than the estimate given by respondent's contractor, regarding the repair of the

water damage in petitioner's kitchen. Mr. Blankenship's estimate included a $325 fee to inspect for mold and the $3,662.06 for the additional work involving petitioner's granite countertops that had to be performed by a different contractor, who specialized in that field. The circuit court found that Mr. Blankenship's total estimate for the kitchen work was $22,372.66. From this amount, the circuit court subtracted petitioner's $5,000 deductible and the $11,175.07 that respondent already paid to petitioner. Accordingly, the circuit court found that the maximum amount that petitioner could recover on his breach of contract claim was $6,197.59, plus interest.

Following the circuit court's March 11, 2016, order, petitioner filed a motion to disqualify The Honorable David W. Nibert from continuing to preside in this case on April 8, 2016. According to Judge Nibert, petitioner failed to submit a copy of his motion to the judge, as required by West Virginia Trial Court Rule 17.01(a)(3), so that the judge would be aware of it. By administrative order entered on May 3, 2016, the Chief Justice of this Court denied the April 8, 2016, motion for Judge Nibert's disqualification and directed the judge to continue presiding in the case.

On April 6, 2016, respondent filed a confession of judgment and, on April 13, 2016, filed a motion to dismiss stating that it tendered a check to petitioner for $6,197.59, plus applicable interest, in the total amount of $9,088.21. Respondent attached a proposed order dismissing the parties' case to its motion. On April 27, 2016, the circuit court granted respondent's motion and dismissed the parties' case, including a counterclaim previously filed by respondent, with prejudice.[2]

Given that the April 27, 2016, dismissal order was entered while petitioner's April 8, 2016, motion for Judge Nibert's disqualification was pending, petitioner filed a supplemental motion for disqualification on May 4, 2016. In the supplemental motion, petitioner alleged that Judge Nibert "concocted" the story about being unaware of petitioner's April 8, 2016, motion for disqualification and violated Trial Court Rule 17.01(b)(1) by entering the dismissal order on April 27, 2016. By administrative order entered on May 4, 2016, the Chief Justice denied petitioner's supplemental motion for disqualification and again directed Judge Nibert to continue presiding in the case.

Petitioner now appeals the circuit court's March 11, 2016, order awarding respondent partial summary judgment and its April 27, 2016, order dismissing the parties' case following respondent's confession of judgment on petitioner's breach of contract claim that remained pending. Respondent counters that the circuit court's March 11, 2016, and April 27, 2016, orders should be affirmed.

We review both the entry of summary judgment and the entry of a dismissal de novo. *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994) (summary judgment); Syl. Pt. 2*, State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516

---

[2]In 2014, respondent sought and obtained the circuit court's leave to file a counterclaim against petitioner for the spoliation of evidence because petitioner disposed of the damaged pipe and pipe fitting prior to its inspection by respondent.

(1995) (dismissal). However, because the April 27, 2016, dismissal of this case depends on the circuit court's rulings in the March 11, 2016, partial summary judgment order, we evaluate this case under Rule 56 of the West Virginia Rules of Civil Procedure, which governs motions for summary judgment.

As an initial matter, petitioner contends that the circuit court's award of partial summary judgment was improper because discovery was incomplete. An award of summary judgment must not be "precipitous." *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 61, 459 S.E.2d 329, 338 (1995) (internal quotations and citations omitted); *see* Rule 56(f), W.V.R.C.P. In this case, respondent did not file its motion for partial summary judgment until after the closing of discovery on April 30, 2015. By that time, respondent took the depositions of both petitioner and his contractor and, as reflected by the record, responded to various discovery requests and requests for admissions submitted by petitioner. Dissatisfied with respondent's responses to those requests, petitioner filed various motions to compel respondent to respond more fully. However, the circuit court declined to consider petitioner's motions on the ground that he failed to properly notice them. The circuit court further found that the parties' discovery disputes related to petitioner's seeking of information for his causes of action alleging bad faith, fraud, and professional negligence. Thus, the circuit court determined that petitioner's discovery motions would be resolved by its ruling on either respondent's motion to bifurcate those claims from petitioner's breach of contract claim or respondent's motion for partial summary judgment to the extent that the summary judgment motion also sought bifurcation of petitioner's causes of action. Therefore, we find that the circuit court resolved petitioner's discovery motions by awarding respondent summary judgment on petitioner's claims alleging the mishandling of his insurance claim and finding that his breach of contract claim, as modified by the court's March 11, 2016, order, could proceed. Accordingly, we conclude that the circuit court's award of partial summary judgment to respondent was not precipitous, as we affirm the March 11, 2016, order.

With regard to the circuit court's March 11, 2016, order, petitioner first contends that the circuit court erred in awarding respondent summary judgment on his claims alleging the mishandling of his insurance claim. Rule 56(c) provides that summary judgment "shall" be granted provided that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In syllabus point 4 of *Painter*, we held that "[s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." 192 W.Va. at 190, 451 S.E.2d at 756.

To substantiate claims alleging the mishandling of a single insurance claim, the insured must show a violation of the West Virginia Unfair Trade Practices Act ("UTPA"), West Virginia Code §§ 33-11-1 through 33-11-10, as follows:

> To maintain a private action based upon alleged violations of W.Va. [C]ode § 33-11-4(9) in the settlement of a single insurance claim, the evidence should establish that the conduct in question constitutes more than a single violation of W.Va. [C]ode § 33-11-4(9), that the violations arise from separate, discrete acts or

omissions in the claim settlement, and that they arise from a habit, custom, usage, or business policy of the insurer, so that, viewing the conduct as a whole, the finder of fact is able to conclude that the practice or practices are sufficiently pervasive or sufficiently sanctioned by the insurance company that the conduct can be considered a "general business practice" and can be distinguished by fair minds from an isolated event.

Syl. Pt. 4, *Dodrill v. Nationwide Mut. Ins. Co.*, 201 W.Va. 1, 491 S.E.2d 1 (1996). In the instant case, petitioner bases his claim-mishandling causes of action on two possible violations of the UTPA: (1) respondent's request that petitioner file a separate claim involving the water damage; and (2) respondent's handling of petitioner's claim as involving two occurrences, despite his refusal to file a separate claim, so that it could reduce the amount it owed him by applying his $5,000 deductible twice.

Although petitioner states that his policy sets forth a definition of "occurrence," neither party relies on the policy language.[3] Rather, the parties' disagreement focuses on whether whoever damaged the exterior doors then went inside and caused the "[m]inute" crack under petitioner's kitchen sink. According to petitioner's deposition testimony, the crack in the damaged pipe fitting was no longer than a fourth of an inch. At petitioner's contractor's deposition, Mr. Blankenship testified that one would expect to see more extensive damage when a pipe or a pipe fitting is damaged by vandalism. Respondent's attorney specifically asked Mr. Blankenship whether he "would expect to see more than a small slit in the pipe." Mr. Blankenship answered, "Oh, yes, right."

While petitioner does not attempt to rehabilitate Mr. Blankenship's testimony,[4] he does challenge it. Despite the fact that Mr. Blankenship was petitioner's contractor whom he listed as a potential fact witness in his pretrial memorandum, petitioner contends on appeal that Mr. Blankenship could offer no testimony relevant to the parties' case given that Mr. Blankenship's deposition occurred several years after his inspection of petitioner's home and that Mr.

---

[3]Petitioner states that a complete copy of his homeowners' policy was never entered into the record.

[4]In syllabus point 3 of *Williams*, we held, as follows:

> If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.

194 W.Va. at 56, 459 S.E.2d at 333.

Blankenship's inspection took place after the pipe and pipe fitting were repaired. *See* Rule 602, W.V.R.E. (providing that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter').

Notwithstanding petitioner's argument, we find that his contractor possessed sufficient experience in the inspection of vandalized pipes that Mr. Blankenship could testify as an expert pursuant to Rule 702(a) of the West Virginia Rules of Evidence, which provides that "[i]f . . . technical . . . or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Mr. Blankenship testified, as follows:

> Q. Have you had occasion to review pipes that have been vandalized in your experience as a contractor?
>
> A. Yes, I have.
>
> Q. When pipes are vandalized, what do they—do they appear to be in good order or do they appear otherwise?
>
> A. It all depends on how they do it. I've seen evidence before where someone has taken a saw or a file, and there will be a straight mark. There's usually scratches on it, the area that's vandalized, a lot of times they'll take a hammer. And[,] if you're going to vandalize it, most of the time they'll vandalize at a joint, like where the pipe goes into a fitting. They'll take pliers and they crimp and they squeeze that. That's normally what we see if deliberately if someone's trying to do it, that's what they do because they always want to go to the same to do it.

Given petitioner's contractor's testimony that petitioner's description of a "[m]inute" crack in a pipe fitting was inconsistent with pipe damage typical of vandalism, we concur with the circuit court's finding that there was no evidence that whoever damaged the exterior doors then went inside and caused the water damage. Given the absence of such evidence served the basis of (1) respondent's request that petitioner file a separate claim involving the water damage; and (2) respondent's handling of petitioner's claim as involving two occurrences despite his refusal to file a separate claim, we find that the record taken as a whole could not lead a rational jury to find that petitioner could prove a violation of the UTPA. Therefore, we conclude that the circuit court did not err in awarding respondent summary judgment on petitioner's claims alleging the mishandling of his insurance claim.

With regard to petitioner's remaining claim, he had to prove the following elements to show breach of contract: (1) the formation of a contract; (2) a breach of the terms of that contract; and (3) resulting damages. *See Sneberger v. Morrison*, 235 W.Va. 654, 669, 776 S.E.2d 156, 171 (2015). There is no dispute that the parties agreed that respondent would provide petitioner with homeowners' insurance coverage. Next, because respondent requested that the circuit court calculate the maximum amount that petitioner could recover on his breach of contract claim,

respondent conceded for the purposes of its motion that it breached the terms of petitioner's homeowners' policy.

The only remaining issue is the amount of damages owed to petitioner. Given that respondent's treatment of petitioner's insurance claim as involving two occurrences was proper, its application of petitioner's deductible to each occurrence was likewise proper. Therefore, we conclude that the circuit court did not err in finding that respondent owed petitioner nothing for the damage to the exterior doors of his house.

Regarding the water damage, the circuit court construed the evidence in the light most favorable to petitioner and utilized Mr. Blankenship's higher estimate for that occurrence. *See Painter*, 192 W.Va. at 192, 451 S.E.2d at 758 (providing that, when considering a motion for summary judgment, a court construes the evidence in the light most favorable to the nonmoving party). The use of Mr. Blankenship's estimate allowed the circuit court to include a $325 mold inspection fee and the $3,662.06 for the additional work involving petitioner's granite countertops that had to be performed by a different contractor, who specialized in that field. The circuit court found that Mr. Blankenship's total estimate for the kitchen work was $22,372.66. From this amount, the circuit court subtracted petitioner's $5,000 deductible and the $11,175.07 that respondent already paid to petitioner. Petitioner contends that the circuit court should have included more costs; however, to the extent that he specifies other costs that he wanted included, he fails to adequately explain why such additional costs should be considered part of his insurance claim.[5] Petitioner also alleges that the circuit court made a mathematical error in its calculations, but fails to specify what that error is. Therefore, we conclude that the circuit court did not err in finding that no genuine issue of material fact exists that the maximum amount that petitioner could recover on his breach of contract claim was $6,197.59, plus interest.

Given the correctness of that finding, and respondent's confession of judgment and tender of a check to petitioner for $6,197.59, plus applicable interest, in the total amount of $9,088.21, we find that the circuit court did not err in dismissing petitioner's civil action. Apart from the issues raised by petitioner in contending that the circuit court's rulings in its March 11, 2016, order were erroneous, petitioner's only argument regarding the April 27, 2016, dismissal order is that the circuit court was barred from entering that order while petitioner's first motion for Judge Nibert's

---

[5]Petitioner's argument regarding what additional costs the circuit court should have taken into account is confusing because, on the one hand, he asserts that the court should have included another inspection fee he had to pay in the amount of $350 while, on the other hand, contending that the court should have *excluded* personal property damage in the total amount of $306.88. Petitioner may be saying that respondent should not be credited with making payments for the personal property damage, but, because petitioner fails to provide an analysis of the policy language, there is no way to determine that. We note here that, while neither party relies on the language of petitioner's policy, the interpretation of that policy would not be a jury question. Rather, "[t]he interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination[.]" Syl. Pt. 2, *Riffe v. Home Finders Associates. Inc.*, 205 W.Va. 216, 517 S.E.2d 313 (1999).

disqualification was pending. Trial Court Rule 17.01(b)(1) provides that "regardless of whether the judge finds good cause and agrees to the disqualification motion or not, the judge shall: . . . (1) proceed no further in the matter . . . ." We find that this issue was already addressed as a ground for disqualification in the May 4, 2016, administrative order, in which the Chief Justice denied petitioner's supplemental motion for disqualification and once again directed Judge Nibert to continue presiding in the case. As a substantive issue, we find that the entry of the dismissal order while petitioner's first motion for disqualification was pending constituted harmless error pursuant to *Shenandoah Sales & Service, Inc. v. Assessor of Jefferson County*, 228 W.Va. 762, 773, 724 S.E.2d 733, 744 (2012), given that there was no justifiable reason for Judge Nibert's disqualification. Therefore, we affirm both the circuit court's March 11, 2016, order finding that (1) no rational jury could find for petitioner on his claims for bad faith, fraud, and professional negligence; and (2) the maximum amount that petitioner could recover on his breach of contract claim was $6,197.59, plus interest; and the circuit court's April 27, 2016, order dismissing petitioner's action with prejudice after respondent tendered a check to petitioner for $6,197.59, plus applicable interest, in the total amount of $9,088.21.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED**:  April 21, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker